**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dario RESTREPO,**
**Defendant–Appellant.**

**No. 88–3207.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1989.

Decided Aug. 24, 1989.

Ted J. Stepovich, Fairbanks, Alaska, for defendant-appellant.

Stephen Cooper, Asst. U.S. Atty., Fairbanks, Alaska, for plaintiff-appellee.

Before PREGERSON, BOOCHEVER and NOONAN, Circuit Judges.

PREGERSON, Circuit Judge:

■ Dario Restrepo appeals his forty-six month prison sentence imposed after he was convicted of two counts of distribution of cocaine. The appeal presents the following question concerning the interpretation of the new Sentencing Guidelines [1] ("Guidelines"): In sentencing Restrepo, did the district court err in construing the Guidelines' Multiple Counts section (Chapter Three, Part D) to apply to conduct that did not result in his conviction. We conclude

that conduct that does not result in a criminal conviction should not be considered under the Multiple Counts section in fixing the appropriate guideline range for a narcotics offense. We therefore reverse and remand to the district court for resentencing.

## BACKGROUND

On March 8, 1988, Restrepo was indicted on two counts of distribution of cocaine (counts I and II) under 21 U.S.C. § 841(a)(1).[2] His co-defendant, Judith De-Maldonado, also was charged with distribution of cocaine in count II. Additionally, she was indicted for possession of cocaine with intent to distribute (counts III and IV) in violation of 21 U.S.C. § 841(a)(1). De-Maldonado pled guilty to counts II, III, and IV and agreed to testify against Restrepo in exchange for a lighter sentence. At trial, DeMaldonado testified that Restrepo provided all the cocaine that she had sold. Restrepo was convicted on counts I and II.

At Restrepo's sentencing hearing, held on August 5, 1988, DeMaldonado, the sole witness, repeated her trial testimony. At this time Restrepo challenged the constitutionality of the Guidelines on due process and separation of powers grounds. Restrepo also objected to how the district court's applied sections 3D1.1 (the Multiple Counts section) and 1B1.3 (the Relevant Conduct section) in determining the appropriate sentence guideline range for the offenses of which he was convicted. The court overruled the objections.

The court then found that all the drugs involved in the charges against Judith De-Maldonado set forth in counts III and IV were part of a common scheme in which Restrepo was a participant.[3] Based on this

---

1. The Sentencing Guidelines were enacted pursuant to the Sentencing Reform Act of 1984, Pub.L. No. 98-473, tit. II, ch. II, 98 Stat.1987 (codified as amended at 18 U.S.C. §§ 3553-3742 and 28 U.S.C. §§ 991-998).

2. 21 U.S.C. § 841(a)(1) provides in pertinent part:

   [I]t shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

3. The court found that the government had proved Restrepo's and DeMaldonado's participation in a common scheme by clear and convincing evidence. Transcript of Sentencing Proceedings at 65 ("I'm satisfied certainly by a preponderance of evidence and in fact, I think, by clear and convincing evidence that Dario Restrepo supplied the cocaine that Judith Mal-

finding, and pursuant to the Multiple Counts section of the Guidelines, Part 3D, the court then ruled that the quantity of drugs involved in the charges against De-Maldonado (counts III and IV) were to be added to the quantity of drugs involved in the charges against Restrepo (counts I and II) for the purpose of fixing the appropriate guideline range of Restrepo's sentence.[4] As a result, the court adopted the guideline range of forty-one to fifty-one months imprisonment. The court then sentenced Restrepo to a forty-six month prison term. Had the district court not aggregated the drugs involved in counts III and IV with the drugs involved in counts I and II, the guideline range for Restrepo's sentence would have been thirty-three to forty-one months.[5]

## STANDARD OF REVIEW

Generally, we review a sentence imposed on a criminal defendant for abuse of discre-

donado had at her house and that she sold on March 1, the other cocaine that he wasn't convicted of."). The court also used language more consistent with a beyond a reasonable doubt standard of proof: "Now, in this case, the facts plainly support the conclusion and no other conclusion that the drugs which Judith Maldonado sold in Count Three and the drugs which she possessed in Count Four and the drugs that were found at her house late when she turned them in, were all part of the common scheme." *Id.* at 64.

**4.** The court made several other findings material to fixing Restrepo's sentence under the Guidelines. First, the court found applicable the penalty enhancement provision of Section 2D1.3 (based on 21 U.S.C. § 845a) because Restrepo's sale of contraband in count one occurred within one thousand feet of a school (i.e., the University of Alaska). Second, the court found that Restrepo had obstructed justice before and during his trial. As a result, the court increased Restrepo's offense level by two levels pursuant to Section 3C1.1 of the Guidelines. Finally, because the court found that Restrepo played the role of leader in the drug dealing ring of which DeMaldonado was a member, the court, pursuant to Section 3B1.1(c), increased Restrepo's offense level by two.

**5.** The aggregation (totalling one hundred three grams of cocaine) raised Restrepo's offense level from level 20 (thirty-three to forty-one months) to level 22 (forty-one to fifty-one months). See Guidelines at 2.39 (base level for 100–199 grams of cocaine is two higher than

tion. *United States v. Messer*, 785 F.2d 832, 834 (9th Cir.1986). However, "[i]ssues of statutory construction are questions of law which we ordinarily review *de novo.*" *Pathfinder Mines Corp. v. Hodel*, 811 F.2d 1288, 1290 (9th Cir.1987) (citing *United States v. McConney*, 728 F.2d 1195 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)).

## ANALYSIS

The issue here is whether the district court erred in determining the "total offense level" for Restrepo's convictions. Section 1B1.1 of the Guidelines [6] provides instructions for applying the Guidelines to fix the convicted defendant's total offense level. The trial court first determines the "base offense level" by resort to the guideline section of Chapter Two most applicable to the statute of conviction. Additionally, the particular guideline section in Chapter Two may contain specific offense charac-

base level for 50–99 grams of cocaine); *id.* at 5.2 (sentencing table).

**6.** The initial version of the Guidelines took effect on November 1, 1987. Subsequent versions incorporating numerous amendments took effect on January 15, 1988 and June 15, 1988.

Restrepo's wrongdoing occurred on January 8, 1988 (count I) and January 13, 1988 (count II). The conduct for which he was not charged but which caused his sentence to be enhanced relates to wrongdoing by his codefendant De-Maldonado on March 1, 1988 (counts III and IV). We find no indication in the record of when Restrepo's wrongdoing in connection with DeMaldonado's counts of conviction occurred. The Government submits that Restrepo's nonconvicted wrongdoing occurred at the same time as the offenses of which he was convicted. If so, then all of Restrepo's wrongdoing occurred before January 15, 1988, the effective date of the January 1988 Guidelines.

Restrepo's sentencing took place in August 1988. The district court appears to have applied the June 1988 version of the Guidelines, the version in effect when Restrepo was sentenced, even though Restrepo's wrongdoing occurred before this version became effective. This retrospective application of the Guidelines is mandated under the Sentencing Reform Act of 1984. *See* 18 U.S.C. §§ 3553(a)(4)–(5) (providing that the sentencing court is to apply the version of the Guidelines in effect at the time of sentencing). Because our inquiry is statutory and not constitutional, *see infra* note 7, we follow the mandate of the Guidelines and apply the June 1988 Guidelines.

teristics which, if applicable, will enhance the basic offense level. Next, the court applies any appropriate adjustments to the offense level under the victim, role, and obstruction of justice provisions in Chapter Three. Section 1B1.3 sets forth conduct by the defendant that is relevant to the application of the adjustment provisions in Chapters Two and Three.

In case of multiple counts of conviction, these steps are repeated for each count. Then the court uses the procedures in Part D of Chapter Three to determine the "combined offense level" for all the counts of conviction taken together. Finally, the court makes any appropriate adjustment related to the defendant's acceptance of responsibility (Part E of Chapter Three). What results is the total offense level.

Restrepo contends that the district court misconstrued the Multiple Counts section of the Guidelines because it treated Restrepo's alleged conduct in supplying DeMaldonado the cocaine involved in counts III and IV of which she was convicted as if Restrepo has also been convicted of counts III and IV.[7]

Application of Part 3D, the Multiple Counts section of the Guidelines, is essentially a two-step procedure. First, applying Section 3D1.2, the court combines multiple counts into a single group. Then, applying Section 3D1.3, the court determines the offense level applicable to that group.[8]

Section 3D1.2 provides in pertinent part:

All counts involving substantially the same harm shall be grouped together into a single Group.... Counts involve substantially the same harm within the meaning of this rule:

. . . . .

---

7. We limit our consideration of Restrepo's appeal to an issue of statutory interpretation because Restrepo's two constitutional challenges to the Guidelines must fail. First, he argues that the Guidelines violate due process because evidence of conduct meeting a lesser standard of proof than that required for a criminal conviction (i.e., beyond a reasonable doubt) can in several instances "mechanistically" determine the length of sentence. Restrepo concedes that prior to the introduction of the Guidelines, it was well settled that a sentencing court could consider conduct proved only by a preponderance of the evidence in fixing a sentence. He argues, however, that under the Guidelines, such conduct, when proved merely by a preponderance of the evidence, *must* be given a predetermined effect by the judge regardless of any circumstances that might otherwise cause the judge to give less or no effect to the proffered evidence. Thus, in stark contrast to the pre-Guidelines state of affairs, a sentencing judge, upon the introduction of certain types of evidence proved only by a preponderance, is bound to give such evidence a specific sentencing effect and cannot, as was the practice before the Guidelines, consider other factors that would mitigate the force of such evidence. Whatever the merit of this argument, it was foreclosed by the Supreme Court's recent rejection of a similar due process challenge to Pennsylvania's Mandatory Minimum Sentencing Act. *See McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986) ("We have some difficulty fathoming why the due process calculus would change simply because the legislature has seen fit to provide sentencing courts with additional guidance.... Sentencing courts necessarily consider the circumstances of an offense in selecting the appropriate punishment, and we have consistently approved sentencing schemes that mandate consideration of facts related to a crime ... without suggesting that those facts must be proved beyond a reasonable doubt.") (citations omitted).

Restrepo also contends that the Sentencing Reform Act of 1984 and the Guidelines promulgated thereunder violate the federal constitutional doctrine of separation of powers. Since Restrepo's appeal was filed, however, the Supreme Court has held that no such infirmity exists. *See Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

After oral argument, the contention that the Guidelines violate the United States Constitution's ex post facto clause was raised as an alternative ground for reversing the district court. In light of the fact that we dispose of this case on a statutory ground, we need not reach the constitutional argument. *See Califano v. Yamasaki,* 442 U.S. 682, 692–93, 99 S.Ct. 2545, 2553–54, 61 L.Ed.2d 176 (1979) ("A court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering the constitutional question. Due respect for the coordinate branches of government, as well as a reluctance when conscious of fallibility to speak with our utmost finality, counsels against unnecessary constitutional adjudication.") (citations omitted).

8. Some cases will include a third step in the procedure. Where the defendant's counts have been tied together in more than one group, the district court applies Section 3D1.4 to determine the offense level applicable to all the groups taken together.

(d) When counts involve the same general type of offense and the guidelines for that type of offense determine the offense level primarily on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm. Offenses of this kind are found in Chapter Two ... [some sections of] Part D [including Section 2D1.1]. . . .

Section 2D1.1 is the section that applies to Restrepo's offenses. Pursuant to Section 3D1.2(d), the district court grouped together counts I and II (i.e., Restrepo's two counts of conviction) with counts III and IV (i.e., two of Maldonado's three counts of conviction). After invoking Section 3D1.-2(d), the next step is to aggregate quantities of drugs from the several counts pursuant to Section 3D1.3(b). *See also* Guidelines § 1A.4(e), at 1.9 ("[The rules in Chapter Three, Part D] essentially provide: (1) When the conduct involves fungible items, *e.g.*, separate drug transactions or thefts of money, the amounts are added and the guidelines apply to the total amount.").

■ Restrepo contends, however, that no provision of Chapter Three allows the grouping together of his counts of conviction with DeMaldonado's counts of conviction because Restrepo was never even charged with, much less convicted of, the latter counts. He cites the opening sentence of Part D, Chapter Three of the Guidelines: "This Part provides rules for determining a single offense level that encompasses all the counts *of which the defendant is convicted.*" Guidelines at 3.9 (emphasis added). Moreover, Section 3D1.1 begins: "When a defendant *has been convicted* of more than one count, the court shall. . . ." (Emphasis added.) Restrepo contends that Chapter Three of the Guide-

lines, when properly interpreted, applies only to the defendant's own counts of conviction. Accordingly, he argues that the district court erred in applying Chapter Three provisions to two of DeMaldonado's three counts of conviction to enhance Restrepo's sentence by increasing his base offense level.[9]

The Government contends that Restrepo's interpretation of Chapter Three is precluded by the clear and unambiguous language of Section 1B1.3 (the Relevant Conduct section), which provides in pertinent part:

[A]djustments in Chapter Three, shall be determined on the basis of the following:

.    .    .    .    .

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. . . .

Guidelines at 1.17. The "Application Note" for this provision adds: "This subsection applies to offenses of types for which convictions on multiple counts would be grouped together pursuant to § 3D1.2(d); *multiple convictions are not required.*" *Id.* at 1.18 (emphasis added). This last phrase, so the government contends, clearly indicates that conduct of which the defendant was not convicted can be considered in applying the Chapter Three rules.

The government also points to the following language from the "Background" section following the "Application Notes":

[Section 3D1.2(d) provides] for grouping together (*i.e.*, treating as a single count)

---

**9.** To state the issue in the terminology of the Guidelines, the question is whether the Guidelines take a "real offense" or a "charge offense" approach in its provisions regarding multiple counts. *See* Guidelines at 1.5. The charge offense approach bases a sentence only on conduct that served as the basis for the defendant's indictment and conviction. The real offense approach, on the other hand, allows a court to consider any relevant conduct on the part of the defendant.

The Sentencing Commission initially sought to institute a real offense system but such a framework proved to be impractical. Guidelines at 1.5. After trying to implement a "modified real offense system," the Commission abandoned this as well and moved closer to a charge offense system. *Id.* "The system is not, however, pure; it has a number of real elements." *Id.* The ultimate question presented in this appeal is whether Subsection 3D1.2(d) is one of the "real offense" exceptions to the general charge offense framework.

all counts charging offenses of a type covered by this subsection. However, the applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged.... [I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

*Id.* at 1.19. The government contends that this section controls the application of the rules contained in the Multiple Counts section of the Guidelines. Accordingly, the government argues that the district court properly aggregated the quantities of drugs involved in two of DeMaldonaldo's counts (III and IV) with the quantities in Restrepo's counts (I and II) pursuant to Sections 3D1.2(d) and 3D1.3(b).[10]

We are not persuaded by the government's argument. In our view, the Multiple Counts section, by its explicit terms, applies only to counts of which the defendant has been convicted. As noted above, the opening sentence of the Multiple Counts section refers to "all the counts *of which the defendant is convicted,*" Guidelines at 3.9 (emphasis added), and Section 3D1.1 provides instructions for when "a defendant *has been convicted of more than one count ....*" Guidelines at 3.10 (emphasis added). The language that the government cites in the Relevant Conduct section—which provides that conduct related to counts of conviction can be grouped together with conduct not related to any count of conviction—conflicts with the above quoted language of the Multiple Counts section.

At best, the Guidelines are ambiguous because they support both the interpretation offered by Restrepo and the interpretation offered by the Government. Given this ambiguity, our interpretation of the Guidelines should be informed by the "rule of lenity." The Supreme Court articulated this rule in *Rewis v. United States,* 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), stating that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id.* at 812, 91 S.Ct. at 1059; *see also Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). More recently, the Court has held that the rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980).

Applying the rule of lenity, we hold that the district court erred in interpreting the Multiple Counts section of the Guidelines to require aggregation under subsections 3D1.2(d) and 1B1.3(a)(2) of quantities of drugs involved in counts of which Restrepo was convicted with quantities of drugs involved in counts of which Restrepo was neither charged nor convicted.

REVERSED AND REMANDED.

BOOCHEVER, Circuit Judge, dissenting:

Because I believe the Sentencing Guidelines, read in conjunction with the commentary sections, are not ambiguous as to whether conduct of which the defendant is not convicted can be aggregated to determine the total offense level, I respectfully dissent.

10. There may be some confusion as to the route by which the district court arrived at Restrepo's sentence because the Guidelines actually contains two separate Common Scheme provisions. We have ignored the Common Scheme provision of Section 3D1.2(b) because application of it to Restrepo's case would be superfluous. That is, Section 3D1.2(b) provides that multiple counts are to be grouped together when such counts, inter alia, "constitute part of a common scheme or plan...." The consequence of such grouping, however, is not a total offense level based on the aggregation of the quantities of drugs involved in the various counts. Rather, the total offense level for the group is the offense level for the most serious offense among the counts in the group. *See* Section 3D1.3(a). Thus, to aggregate quantities of drugs, resort to Section 3D1.2(d) is required. And once that section is invoked, then the Common Scheme provision contained in Section 1B1.3(a)(2) also applies. In such circumstances, application of Section 3D1.2(b) would be superfluous.

"The [Supreme] Court has emphasized that the 'touchstone' of the rule of lenity 'is statutory ambiguity.' " *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) (quoting *Lewis v. United States,* 445 U.S. 55, 65, 100 S.Ct. 915, 920, 63 L.Ed.2d 198 (1980)). " 'This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual *when such an interpretation can be based on no more than a guess as to what Congress intended.'* " *Id.* (emphasis added) (quoting *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958)). If the intent is clear, however, courts cannot "manufacture ambiguity in order to defeat that intent." *Id.*

I could agree with the majority opinion were it not for the amendments to the commentary in 1988.[1] The commentary to section 1B1.3 provides that: "Similarly, in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." United States Sentencing Commission Sentencing Guidelines Manual 1.19 (January 15, 1988) [hereinafter Guidelines]. The commentary to section 1B1.3 further provides that "multiple convictions are not required." Guidelines at 1.18 (January 15, 1988).

The majority finds this commentary inconsistent with provisions of the Multiple Counts section of the Guidelines referring to aggregating "all the counts of which the defendant is convicted", Guidelines at 3.9 (October 1987), and section 3D1.1 referring to "when a defendant has been convicted of more than one count.... Guidelines at 3.10 (October 1987). Consequently, the majority applies the rule of lenity because "[a]t best, the Guidelines are ambiguous because they support both the interpretation offered by Restrepo and the interpretation offered by the Government." Opin-

ion at 11. The sections cited by the majority, however, do not limit the aggregated quantity to the amounts charged in the counts of which the defendant is convicted. They do not state that *only* the counts of which the defendant is convicted may be considered. There is no inconsistency, therefore, when another provision mandates adding quantities of drugs "not specified in the count of conviction ... if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *See* Guidelines § 1B1.3, commentary at 1.19 (January 15, 1988); *see also United States v. Ruelas-Armenta,* 684 F.Supp. 1048 (C.D.Cal.1988).

The Guidelines support the interpretation offered by Restrepo only if the commentary to the Guidelines is ignored. Section 1B1.7 of the Guidelines provides:

> The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the guideline or explain how it is to be applied. *Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal.* Second, the commentary may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines. *Such commentary is to be treated as the legal equivalent of a policy statement.*

Guidelines at 1.22 (January 15, 1988) (emphasis added) (citation omitted). The commentary to this section further provides that: "in seeking to understand the meaning of the guidelines courts likely will look to the commentary for guidance as an indication of the intent of those who wrote them. In such instances, the courts will treat the commentary much like legislative history or other legal material that helps determine the intent of a drafter." Guidelines at 1.22 (January 15, 1988). In this case, I believe the Sentencing Commission's intent is clear that conduct of which the

---

**1.** 18 U.S.C. section 3553(a)(4) & (5) provide that the Sentencing Guidelines that "are in effect on the date the defendant is sentenced" are to be used by the sentencing court. Consequently

since Restrepo was sentenced after the effective date of the amended Guidelines and commentary, the 1988 Guidelines would control.

defendant is neither charged nor convicted of may properly be used to adjust the offense level under Chapter 3 of the Guidelines, and consequently the policy of lenity may not be used to defeat this intent. *See Bifulco*, 447 U.S. at 387, 100 S.Ct. at 2252.

This case also raises the question whether the amended commentary may constitutionally be applied to conduct that occurred before the effective date of the amendments. If Restrepo furnished drugs to Maldonado before January 15, 1988, the effective date of the amended Guidelines, and those quantities were considered in the sentencing, I believe that an ex post facto question may be involved. *See Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). A difficult constitutional question would be presented as to whether the amended commentaries would be considered "laws" for purposes of the ex post facto clause. *See Vermouth v. Corrothers*, 827 F.2d 599, 604 (9th Cir. 1987) (parole guidelines established by the Parole Commission were not "laws" for purposes of the ex post facto clause). Before attempting to resolve that difficult constitutional issue, however, it would be necessary to remand to the trial court for a determination of the exact dates when Restrepo furnished drugs to Maldonado. I, therefore, would remand the case to the trial court for that purpose.