UNITED STATES, Appellee,

v.

Alfonso BLANCO, Defendant, Appellant.

No. 89–1450.

United States Court of Appeals, First Circuit.

Oct. 3, 1989.

Decided Nov. 7, 1989.

**908**

Paul Borges, with whom Joseph A. Bevilacqua, Jr., Providence, R.I., was on brief for appellant.

Kenneth P. Madden, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief for appellee.

Before CAMPBELL, Chief Judge, BROWN,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

In late 1988 a federal grand jury returned a six count indictment against the appellant, Alfonso Blanco. The first three counts charged him with possessing (with intent to distribute) about 125 grams of cocaine in July, August, and November 1988. 21 U.S.C. § 841(a)(1) and (b)(1)(C). The remaining counts charged him with attempting (and conspiring) to distribute a larger amount of cocaine at about the same time. 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and (b)(1)(C); 21 U.S.C. § 846. Blanco pled guilty to the first three counts; the government dropped the last three counts; and,

* Of the Fifth Circuit, sitting by designation.

after a sentencing hearing, the district court, using the Sentencing Guidelines, sentenced Blanco to a term of 84 months imprisonment. Blanco now appeals this sentence.

■ 1. Blanco points out that his sentence rests upon a determination that he possessed, or attempted to possess, between 500 grams and 1.9 kilograms of cocaine—an amount of cocaine for which the Guidelines set an offense level of 26 (which, for a person with appellant's criminal history, translates into 70 to 87 months imprisonment). Guidelines §§ 2D.1.1; 4A1.1; Ch. Pt. 5 A (1988). Blanco notes that he pled guilty to charges involving only about 125 grams of cocaine, and he claims that the government did not prove that he possessed, or attempted to possess, the rest of the cocaine.

The record, however, contains adequate support for the court's finding that Blanco possessed or attempted to possess between 500 grams and 1.9 kilograms of cocaine. The presentence report states that the distributions that Blanco admitted "were intended as samples of larger quantities of cocaine for which the [DEA] agent and Blanco were negotiating." In so stating, the report reiterated the Assistant United States Attorney's statement to the court, when Blanco changed his plea to guilty, that the distribution "was a sample in anticipation of some future transaction." The Assistant U.S. Attorney responded affirmatively to the court's question: "[T]hey were negotiating for a sale of a *kilogram*?" (Emphasis added.) After this colloquy, the court asked Blanco, "[D]o you agree that the facts as recited by the prosecutor are true and accurate?" After some initial hesitation, Blanco responded, "All of it, yes."

Blanco, of course, had a right to dispute the truthfulness of any of the statements in the presentence report, Fed.R.Crim.P. 32(c)(3)(A), but he did not do so. *See United States v. Fernandez*, 877 F.2d 1138, 1142 (2d Cir.1989) (holding that sentencing court correctly considered larger amount of

cocaine where defendant did not challenge assertion in presentence report that 25 kilograms of cocaine was found in his possession). Thus, the court could properly find, by a "preponderance" of the evidence, that Blanco was involved in a "course of conduct or common scheme or plan," Guidelines § 1B1.3(a)(2), that included both the actual distribution of 125 grams of cocaine and an attempt to distribute several hundred additional grams. *See McMillan v. Pennsylvania,* 477 U.S. 79, 91–92, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986) (sentencing courts before Guidelines found facts without any prescribed burden of proof at all; preponderance standard satisfies due process requirements); *United States v. Wright,* 873 F.2d 437, 441–42 (1st Cir.1989) (government must prove facts relied on in sentencing by "preponderance of evidence"); *United States v. Lee,* 818 F.2d 1052, 1057 (2d Cir.1987), *cert. denied,* 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987) (adopting preponderance standard for disputed allegations in presentencing report). *See also* Guidelines § 6A1.3 (court may consider all relevant information that has "sufficient indicia of reliability to support its probable accuracy"); *McMillan,* 477 U.S. at 92, 106 S.Ct. at 2419 ("Sentencing courts necessarily consider the circumstances of an offense in selecting the appropriate punishment"); *United States v. Marshall,* 719 F.2d 887, 891 (7th Cir.1983) (sentencing court may consider relevant information it could reasonably believe to be reliable where defendant given opportunity to rebut information).

■ 2. Blanco next argues that the Guidelines do not permit a sentencing judge to take into account conduct, such as the possession (or attempted possession) of additional drugs, not covered by the counts of conviction. He notes that the additional drugs in question here were not covered by Counts I, II and III, to which he pled guilty, but, rather, they were the subject of other counts of the indictment (Counts IV, V, and VI), which the Government dropped. The Guidelines, however, specifically instruct the court to take conduct of this sort into account when the crime at issue concerns drugs. They say that

(i) [T]he base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of the following:

... (2) solely with respect to offenses of a character for which § 3D1.2(d) [the "fungible items/drugs/money" part of the "multiple counts" guideline] would require grouping of multiple counts, *all such acts and omissions that were part of the same course of conduct or common scheme or plan* as the offense of conviction.

Guidelines § 1B1.3(a) (emphasis added). Let us apply this language mechanically: (1) The drug guideline relevant to this case, § 2D1.1, is a guideline that has many different "base offense levels," each correlated with a different amount of drug (*e.g.,* the "base offense level" corresponding to "500 grams to 1.9 kilograms" of cocaine is 26). (2) A glance at the relevant cross-reference in the "multiple-count" guideline, § 3D1.2(d), reveals § 2D1.1 listed there as a "fungible items" crime. *See* Guidelines Ch. 1 Pt. A4(e). And, (3) the court properly found that the extra drugs at issue here were part of the "same course of conduct or common scheme or plan as the offense of conviction." Indeed, the Guidelines commentary specifically says that "in a drug distribution case, quantities and types of drugs not specified in any count of conviction are nonetheless included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." Guidelines § 1B1.3(a)(2), background commentary. Hence, the court must apply § 1B1.3 to determine the proper "base offense level," and the court did properly apply the guideline in determining that appellant's offense level was 26.

We can find nothing legally improper about this mechanical operation that the Guidelines require. It reflects a compromise that the Sentencing Commission made among considerations that favor a "real offense" sentencing system and those that favor a "charge offense" system. On the one hand, analysis of *pre*-Guideline sentencing practice revealed that, particularly

in respect to drug and money crimes, the *actual time* the offender *served* reflected the amount of drugs or money *actually involved* in the crime (as revealed by the presentence report), not simply the amount listed in an indictment or shown at trial. To this extent, the pre-Guideline sentencing system was based on real conduct, not simply on the charge. And, the desirability of emulating typical pre-Guideline practice argued for tying punishment to real, not simply charged, conduct. On the other hand, the Commission was aware that a court must determine "real" facts not charged in the indictment, after trial, through less formal methods (such as presentence reports) or through hearings with fewer procedural safeguards than at a full blown criminal trial. Considerations of procedural fairness and administrative efficiency argued for tying punishment more closely to the facts actually charged or proved at trial.

The Commission's compromise in the Guidelines provides that, for the most part, the court will determine the *applicable guideline* by looking to the charge of which the offender was convicted. Thus, a court will look to the drug guideline for one convicted of a drug offense and it will look to the tax evasion guideline for an offender convicted of tax evasion. Even if a tax evader assaulted a tax official in the process of evading taxes, the court would *not* look to the assault guideline unless the offender was actually *convicted* of assault. Once the court determines the proper guideline, however, the Guidelines instruct it to determine the applicability of various adjustments (specific offense characteristics, chapter three adjustments, certain cross references) by looking to the offender's *actual conduct*. Thus, if a bank robber shoots a teller, the court will increase his sentence in light of what actually occurred, whether or not the charge or the trial involved the shooting; that is because the bank robbery guideline, reflecting the types of factors that tended to make a difference to actual time served in the pre-Guideline era, contains a "specific offense characteristic" for shooting a weapon. By way of contrast, note that the tax evasion guideline contains no "specific offense characteristic" related to assault; that is because assaults do not often occur in connection with tax evasions. Thus, where tax evasion is charged and the evader assaulted someone in the process, either the court must depart from the Guidelines, or the government must separately charge and convict the tax evader of assault, in order for the sentence to reflect that unusual circumstance.

We have written this brief explanation both because this aspect of the Guidelines is conceptually the most difficult to understand and because, although most circuits read the Guidelines as we do—*see, e.g., United States v. White,* 888 F.2d 490 (7th Cir.1989), *United States v. Fernandez,* 877 F.2d 1138, 1141–42 (2d Cir.1989), *United States v. Sarasti,* 869 F.2d 805, 806–07 (5th Cir.1989), *United States v. Sailes,* 872 F.2d 735, 738–39 (6th Cir.1989), *United States v. Mann,* 877 F.2d 688, 690 (8th Cir.1989), *United States v. Scroggins,* 880 F.2d 1204, 1211–12 (11th Cir.1989)—the Ninth Circuit does not. *United States v. Restrepo,* 883 F.2d 781 (9th Cir.1989). In *Restrepo* the Ninth Circuit held that a district court could *not* increase a defendant's sentence by taking account of drugs that were not the subject of the counts of conviction (though they were part of the same course of conduct, scheme or plan). The court apparently thought that the Guidelines' "multiple count" rules made consideration of these other drugs inappropriate. (The additional drugs were the subject of other counts with which one of Restrepo's codefendants, but not Restrepo, was charged.) It is the *relevant conduct* rules, however, not the *multiple count* rules, that make this additional conduct relevant to sentencing. The multiple count rules may seem to deal with the same subject, but they do so only insofar as they are written to prevent prosecutors or courts from reaching a different sentencing result simply by dividing a course of drug-related conduct into several parts and charging each part separately in a different count.

The source of confusion may be the fact that the "same course of con-

duct/scheme/plan" subsection (§ 1B1.-3(a)(2), quoted above) begins with a cross-reference to the multiple count rules. But *this cross reference is designed only to pick out a certain subset of all crimes,* namely the subset of "fungible item" crimes, such as those involving drugs and money, which are listed specifically in the cross-referenced multiple count subsection. (It picks them out by referring to "offenses of a *character* for which" this part of the multiple count rules *"would* require grouping" *if* the multiple count rules happened to be applicable (emphasis added).) It is *these* crimes in respect to which the Commission has said that courts should punish convicted defendants by taking into account all the drugs or money that form part of the same conduct, scheme or plan. In respect to *other* crimes, such as murder or bank robbery, the courts will *not* use § 1B1.3(a)(2) to look to acts that are part of the "same course of conduct or common scheme or plan" (though sometimes such acts could fall within some *other* part of the "relevant conduct" guideline, such as § 1B1.3(a)(1), governing conduct that occurred during "preparation for," "commission of" or a cover-up of, the offense of conviction), unless the government separately charges and obtains conviction for these acts.

The reason the Commission has drawn this kind of line reflects the "compromise" between "real offense" and "charge offense" sentencing that we mentioned above, *see* pp. 909–10, *supra.* The placing of this "line" arises from (1) the Commission's analysis of how courts tended to sentence in the past and (2) its weighing, in respect to different kinds of crimes and different ways of committing those crimes, of the considerations for, and against, real offense sentencing. (These matters are described more fully in the Guidelines Introduction, ch. 1, and in Breyer, *The Federal Sentencing Guidelines and the Key Compromises upon Which They Rest,* 17 Hofstra L.Rev. 1, 8–12 (1988). The Seventh Circuit has explained these matters clearly in *White, supra.*) One might argue about the wisdom of the line the Commission has drawn, but we cannot say that the Commission has not drawn it. Thus, we continue to follow our prior cases, and those of other circuits, that have held that the sentencing court, in determining the proper drug offense level, will take account of the drugs that "were part of the same course of conduct or common scheme or plan as the offense of conviction." We decline to follow *Restrepo.*

3. Blanco claims that the district court ought to have given him a two level reduction for "acceptance of responsibility." Guidelines § 3E1.1. He argues that he accepted responsibility by pleading guilty. The relevant guideline, however, while stating that the court should "reduce the offense level by 2 levels," if "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility," also says that entry of a "guilty plea" does not "entitle[ ]" a defendant to a reduction "as a matter of right."

The sentencing court said it would not grant the reduction because "Mr. Blanco basically is blaming his involvement on others.... [H]e has not been candid with ... [the DEA] officer regarding his participation in the cocaine dealing." After reading the presentence report and examining the record, we find sufficient support for this conclusion and for the court's refusal to award the reduction. "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," and his determination with respect to defendant's acceptance of responsibility "is entitled to great deference on review and should not be disturbed unless it is without foundation." Guidelines § 3E1.1, application note 5. *See United States v. Mata–Grullon,* 887 F.2d 23, 24 (1st Cir.1989) (*per curiam* ); *United States v. Zayas,* 876 F.2d 1057 (1st Cir.1989); *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989); *United States v. Nunley,* 873 F.2d 182, 187 (8th Cir.1989).

For these reasons, the judgment of the district court is

*Affirmed.*