900 F.2d 256
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Henrietta ALANOS, a/k/a Prinny, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bertha M. GATES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lawrence Meeks JACKSON, Jr., Defendant-Appellant.
 Nos. 89-5020, 89-5021 and 89-5054.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 3, 1989.
Decided March 15, 1990.
As Amended April 5, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Richard B. Kellam, Senior District Judge. (CR-88-111-N).
 Howard Mark Miller; L. Steven Emmert; Waverly W. Jones, Jr., Virginia Beach, Va., for appellant.
 Robert Bruce Rae, Special Assistant United States Attorney; Michael D. Kmetz, Norfolk, Va., for appellee.
 Henry E. Hudson, United States Attorney, Norfolk, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER and PHILLIPS, Circuit Judges, and FOX, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Bertha Gates, Henrietta Alanos, and Lawrence Jackson appeal sentences they received after each pled guilty to one count in a nine-count indictment relating to their involvement in a conspiracy to distribute cocaine. Jackson also appeals his conviction. In this consolidated appeal, Gates, Alanos, and Jackson each assign different errors in the imposition of their sentences under the Federal Sentencing Guidelines, and Jackson challenges the voluntariness of his guilty plea. Finding no error in the sentences imposed by the district court or in the court's acceptance of Jackson's guilty plea, we affirm.
 
 
 2
 * We discuss the facts and law relevant to the claims of each appellant in turn.
 
 
 3
 * BERTHA GATES
 
 
 4
 Bertha Gates was named in Counts I and II of the nine-count superseding indictment filed on October 11, 1988. Count I charged Gates, the other appellants, and three defendants who have not appealed with conspiracy to distribute cocaine, in violation of 21 U.S.C. Sec. 846; Count II charged Gates and others with distributing and aiding and abetting in the distribution of one-eighth of an ounce of cocaine, in violation of 21 U.S.C. Sec. 841(a) and (b) and 18 U.S.C. Sec. 2. Gates pled guilty to Count II, and the government dismissed Count I with respect to her. At sentencing, however, the district court determined Gates' base offense level by reference to the entire amount of cocaine included in the dismissed conspiracy count, rather than only the one-eighth ounce named in Count II, the count to which Gates had actually pled guilty. As a result, Gates' resulting base offense level was 22, instead of level 12, as she had anticipated, and the ultimate sentence imposed was 21 months imprisonment, instead of a probable range of six to twelve months imprisonment had the lower offense level applied. In addition, the court imposed a $3,000 fine, a special assessment of $50, and three years supervised release.
 
 
 5
 As she did at the sentencing hearing, Gates challenges on appeal the district court's consideration of the total amount of drugs involved in the overall conspiracy. In United States v. Williams, 880 F.2d 804 (4th Cir.1989), we confronted this challenge on similar facts and held that, under Sentencing Guideline Sec. 1B1.3(a)(2), amounts of drugs named in dismissed counts could be considered in setting the applicable sentencing range. In Williams, the defendant had been charged with five counts of distributing cocaine on five separate occasions. The government dismissed four of the counts against Williams in exchange for his plea of guilty to one count. Nonetheless, the sentencing court set Williams' base offense level by totalling the amount of drugs in the dismissed counts. The court found by a preponderance of the evidence that the acts of distribution named in dismissed counts were "part of the same course of conduct," Guideline Sec. 1B1.3(a)(2), and accordingly calculated Williams' base offense level by including the amounts of drugs in the dismissed counts.
 
 
 6
 We affirmed the district court's sentencing. We agreed with the government that the relevant Guidelines and commentary authorized the district court's taking account of other acts in the same course of conduct. Gates' sentencing was practically indistinguishable from the approach approved in Williams, and thus the district court did not err in its reading of the same applicable Guideline. Section 1B1.3(a)(2) provides that
 
 
 7
 the base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of the following: ... (2) solely with respect to offenses of a character for which Sec. 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction....
 
 
 8
 Sentencing for Gates' conviction under 21 U.S.C. Sec. 841 is governed by Guideline Sec. 2D1.1. That guideline "specifies more than one base offense level," as it keys offense level to the type and quantity of controlled substance. Section 2D1.1 is "specifically included" as a Guideline that covers an offense requiring Sec. 3D1.2(d) "grouping of multiple counts." Sec. 3D1.2(d), at 3.13. Thus, the plain language of Sec. 1B1.3(a)(2) directs the court to determine the base offense level on the basis of appropriately related acts and omissions. As we observed in Williams, the commentary to Sec. 1B1.3(a)(2) supports the view that this Guideline section applies to cases where the conduct relevant at sentencing was charged in dismissed counts:
 
 
 9
 Subsection (a)(2) provides for consideration of a broader range of conduct with respect to one class of offenses, primarily certain property, tax, fraud and drug offenses for which the guidelines depend substantially on quantity.... [I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.
 
 
 10
 To date, seven other circuit courts of appeals have now interpreted Sec. 1B1.3(a)(2) and its commentary as we did in Williams,[1] while only one court has given it the narrow reading advocated by Gates.[2] In United States v. Blanco, 888 F.2d 907 (1st Cir.1989), Judge Breyer explained the rationale for the Guidelines approach as understood by the majority of circuits. Essentially, it reflects a fundamental compromise in the Guidelines between "real offense" and "charge offense" sentencing systems. The former approach would gauge sentencing by all the "real conduct" that the defendant engaged in, not merely, as in the latter approach, by the conduct in the charged offense. Mindful of competing concerns, implicated in this debate, for, on the one hand, fully-informed, accurate sentencing and, on the other, the desirability of determining critical "real" facts in criminal trials, the Sentencing Commission adopted a compromise view. Under the Guidelines, sentencing courts would choose the applicable guideline for the offense strictly by reference to the charge, but would then take account of real conduct in determining the applicability of various adjustments. Section 1B1.3 informs this latter inquiry, and, as all but one circuit agree, can yield a dramatically increased offense level when uncharged conduct involved higher quantities of drugs than those described in the count of conviction.
 
 
 11
 The district court properly followed the approach set forth in the Guidelines. We see no merit to Gates' subsidiary contention that the district court lacked sufficient reliable information from which it could have found the higher drug quantities attributible to Gates for sentencing purposes. The district court found that presentence reports and information provided by Gates herself formed a substantial basis of evidence of the conspiracy's operations and Gates' role. Gates' assertion that her guilty plea was the sole evidence of her involvement would be sound only if the court was forbidden from looking beyond the count of conviction. As described above, Sec. 1B1.3(a)(2) authorizes a wider-ranging factual inquiry, and the court was entitled to find, as it did, that Gates' base level offense should be tied to the quantity of drugs in the conspiracy as a whole.
 
 B
 HENRIETTA ALANOS
 
 12
 The nine-count indictment in this case included seven counts against Henrietta Alanos: Count I for conspiracy to distribute cocaine, in violation of 21 U.S.C. Sec. 846; Counts II to IV for distribution of and possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a); and Counts V to VII for unlawful use of a communications facility, in violation of 21 U.S.C. Sec. 843(b). The government later dismissed Counts II to VII in exchange for Alanos' guilty plea to Count I. The government also filed a motion, pursuant to Guidelines Sec. 5K1.1, asking the court to grant a downward departure in Alanos' sentence in recognition of her substantial assistance to authorities. Though not required to do so, Alanos made a similar motion. The court declined to depart and sentenced Alanos to 34 months imprisonment--a sentence conceded by her to be within the applicable Guidelines range. The court also imposed a $3,000 fine, a special assessment of $50, and three years supervised release. Alanos appeals the length of her prison sentence, claiming error in the district court's refusal to grant the downward departure.
 
 
 13
 We have recently held that a district court's decision not to grant a downward departure is not appealable. See United States v. Bayerle, No. 89-5166 (4th Cir. Mar. 9, 1990). Although Bayerle forecloses our review of Alanos' claim, we would in any event have found no error in the district court's ruling that concerns for deterrence justified denying the motion for downward departure.
 
 C
 LAWRENCE JACKSON
 
 14
 Like Alanos, Lawrence Jackson was charged in the first seven counts of the indictment and, by agreement with the government, pled guilty to the conspiracy charge in exchange for dismissal of the other counts. Jackson was sentenced to 40 months imprisonment, a $3,000 fine, a special assessment of $50, and three years supervised release.
 
 
 15
 Jackson challenges his prison sentence solely on the ground that it was harsher than that received by some codefendants who, he contends, were more culpable than he. He does not assert that the sentence violated the law or was impermissible under the Guidelines or governing statutes. Accordingly, this court has no authority to review Jackson's sentence. The statute governing appellate review of Guidelines sentences, 18 U.S.C. Sec. 3742(a), provides:
 
 
 16
 A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence--
 
 
 17
 (1) was imposed in violation of law;
 
 
 18
 (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
 
 
 19
 (3) is greater than the sentence specified in the applicable guideline range, to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
 
 
 20
 (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
 
 
 21
 Jackson's sentence is unreviewable under this statute. Were we to have reached the merits of Jackson's challenge to his sentence, however, we would have agreed with the government that the sentence was proper. We would not have been able to call clearly erroneous the district court's explicit findings that Jackson's involvement was "as great as any other individual" and that "the small difference in the sentence given to him and some of the others is justified by the facts of this case." Joint Appendix at 206.
 
 
 22
 We must also reject Jackson's conclusory challenge to the voluntariness of his guilty plea. Jackson has identified no particular deficiency in either his plea agreement or in the court's acceptance of the plea. Though we have been able only to speculate as to Jackson's objection, our review of the record satisfies us that the court did not err in accepting the plea.
 
 II
 
 23
 For the foregoing reasons, we affirm the judgment and sentences of the district court.
 
 AFFIRMED
 
 
 [1]
 United States v. Blanco, 888 F.2d 907 (1st Cir.1989); United States v. Fernandez, 877 F.2d 1138 (2d Cir.1989); United States v. Taplette, 872 F.2d 101 (5th Cir.1989); United States v. Ykema, 887 F.2d 697 (6th Cir.1989); United States v. White, 888 F.2d 490 (7th Cir.1989); United States v. Allen, 886 F.2d 143 (8th Cir.1989); United States v. Scroggins, 880 F.2d 1204 (11th Cir.1989)
 
 
 [2]
 United States v. Restrepo, 883 F.2d 781 (9th Cir.1989)