USCA1 Opinion

 

 August 11, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1132 UNITED STATES OF AMERICA, Appellee, v. AUGUSTO SERNA, Defendant, Appellant. ____________________ ERRATA SHEET The cover of the opinion of this Court issued on August 4, 1992, is amended as follows: "[Hon. Nicholas Tsoucalas, U.S. District Judge]" should read _____________________ "[Hon. Nicholas Tsoucalas,* U.S. Court of International Trade]". _________________________________  _________________________________ *The Honorable Nicholas Tsoucalas, Judge of the U.S. Court of International Trade, sitting by designation.August 4, 1992 [NOT FOR PUBLICATION] ____________________ No. 92-1132 UNITED STATES OF AMERICA, Appellee, v. AUGUSTO SERNA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Nicholas Tsoucalas,* U.S. Court of International Trade] _________________________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ John C. Doherty on brief for appellant. _______________ Jeffrey R. Howard, United States Attorney, Peter E. Papps, First _________________ ______________ Assistant United States Attorney, and Robert J. Veiga, Assistant ________________ United States Attorney, on brief for appellee. ____________________ ____________________ ______________________________ *The Honorable Nicholas Tsoucalas, Judge of the U.S. Court of International Trade, sitting by designation. Per Curiam. In April 1991, appellant Augusto Serna __________ was charged in a one-count indictment with conspiring to distribute cocaine in violation of 21 U.S.C. 841(a)(1) and 846. Seven other individuals were indicted along with appellant, including appellant's brother, Carlos Serna. Appellant pled guilty to the charge. His brother never has been apprehended and remains a fugitive. Appellant was sentenced on January 13, 1992 to 120 months imprisonment. 1. Appellant contends that the district court erred in calculating the amount of cocaine attributable to him under the United States Sentencing Guidelines. The district court properly relied on the Presentence Report and the testimony presented at the sentencing hearing. See ___ United States v. Garcia, 954 F.2d 12, 14 (1st Cir. 1992). It _____________ ______ attributed to appellant between five and fifteen kilograms of cocaine. Under the Guidelines, this resulted in a base offense level of 32. See U.S.S.G. 2D1.1(c)(6). Appellant ___ received a two-level decrease for acceptance of responsibility. Combined with his criminal history category of I, the sentencing table provides for 97 to 121 months imprisonment. Under 21 U.S.C. 841(b)(1)(A)(ii), the minimum mandatory term of imprisonment is 10 years -- the sentence appellant received. Appellant admits to having sold, on approximately five occasions, a total of 224 ounces of cocaine to a codefendant, Bradley Frost, during 1987. Appellant had been introduced to Frost by a co-worker who knew that Frost was looking for someone from whom he could purchase cocaine. Appellant indicated that he knew where to get the cocaine. He supplied Frost with the drug until appellant left the -3- United States in January 1988 to return to Colombia. Frost stated that he had purchased all of his cocaine (approximately 11 kilograms) from appellant and his brother Carlos. At the sentencing hearing and on appeal, appellant maintains that when he left this country in January 1988, he abandoned the conspiracy, had no further contact with Frost and had ceased to sell cocaine altogether. He also stated that he had never sold cocaine to anyone prior to his involvement with Frost. He specifically testified that he never had made any arrangement with his brother to have him continue to provide cocaine to Frost or to anyone else during appellant's absence. When appellant returned to Lowell in late May or early June of 1988, he found that others were living in the apartment he shared with his brother. Appellant then moved to New Jersey. He went back to Lowell, however, when he found out that the Lowell police had raided his apartment. When appellant went to the Lowell police station to retrieve his passport, which had been seized along with 700 grams of cocaine and $2,900 in cash, he was arrested. U.S.S.G. 1B1.3(a) controls the manner in which a court calculates the quantity of drugs attributable to a defendant for purposes of determining his or her base offense level. Even where a defendant was not personally involved in -4- all of the drug transactions described in an indictment for conspiracy, 1B1.3(a)(1) requires the sentencing court to consider "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction . . . ." An application note to 1B1.3 explains that "[i]n the case of criminal activity undertaken in concert with others . . . the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably __________ foreseeable by the defendant." U.S.S.G. 1B1.3, comment. ___________ (n.1) (emphasis added). We will not overturn the district court's decision to include in its calculation all the drugs Frost purchased unless it is clearly erroneous. See Garcia, 954 F.2d at 16; ___ ______ United States v. Bianco, 922 F.2d 910, 913 (1st Cir. 1991). _____________ ______ The government must prove by a preponderance of the evidence facts sufficient to support the sentence. Bianco, 922 F.2d ______ at 913; United States v. Blanco, 888 F.2d 907, 909 (1st Cir. _____________ ______ 1989). Under this standard, we find that the record contains adequate support for the court's finding that it was reasonably foreseeable that appellant's role as the supplier -5- of Frost's cocaine would be continued by Carlos in his absence. Appellant relies primarily on the argument that because he was not in Massachusetts during most of the conspiracy there was no way he could have known that Carlos was supplying Frost with cocaine. The evidence in the Presentence Report and the evidence presented by government at the sentencing hearing, however, was to the effect that appellant had told Frost that Carlos would take over while appellant was gone. To support this contention, the government pointed to grand jury and other testimony provided by Frost's stepfather, James Alexander. According to Alexander, he and Frost had met on at least six occasions with appellant and Carlos after appellant's return to this _____ country. Alexander stated that Frost would hand money over to appellant. Carlos would then leave the apartment and return with the cocaine. Indeed, Carlos continued to live in the apartment after appellant left for Colombia and when the police raided the apartment they found cocaine on the premises. Finally, there was no link between Frost and Carlos other than appellant. Appellant makes much of the fact that the government did not have Alexander, who was present during appellant's sentencing hearing, testify. However, "[t]he sentencing court is free to rely upon outside evidence, -6- including hearsay evidence that has never been subject to cross-examination." United States v. Zuleta-Alvarez, 922 ______________ ______________ F.2d 33, 36 (1st Cir. 1990), cert. denied, 111 S.Ct. 2039 ____________ (1991). Alexander's testimony and the information contained in the Presentence Report provided a sufficient basis upon which the district court could infer that it was reasonably foreseeable that Carlos would continue to supply Frost with cocaine. See id. at 36-37; Garcia, 954 F.2d at 17. "[W]here ___ ___ ______ there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous." United States v. Ruiz, 905 _____________ ____ F.2d 499, 508 (1st Cir. 1990). 2. Appellant next claims that under U.S.S.G. 3B1.2 he should have received a downward adjustment of between 2 and 4 levels as a "minimal" or "minor" participant in the conspiracy. The government argues that the issue is moot. It points out that the finding that appellant is responsible for over five kilograms triggers a statutory minimum of 10 years (which is what appellant recieved) and this minimum becomes the minimum guideline sentence regardless of any reduction in the offense level on account of minimal or minor participation. U.S.S.G. 5G1.1(b). We agree with the government but note that the district court's refusal to declare appellant a minor or minimal participant would not in any event constitute error. -7- We review a district court's "role in the offense" decision only for clear error. United States v. Brum, 948 _____________ ____ F.2d 817, 820 (1st Cir. 1991); United States v. Rosado- ______________ _______ Sierra, 938 F.2d 1, 1-2 (1st Cir. 1991) (per curiam). ______ Appellant bears the burden of proving his entitlement to a downward adjustment under 3B1.2. Rosado-Sierra, 938 F.2d _____________ at 1. The commentary to 3B1.2 makes plain that a defendant is not entitled to a downward adjustment unless the defendant is "substantially less culpable than the average participant." Comment. (backg'd). "It is intended that the downward adjustment for a minimal participant will be used infrequently." U.S.S.G. 3B1.2, comment. (n.2). As examples of minimal actors, this note cites one whose only role is to off-load a single shipment of marijuana or one who was recruited only as a courier in a single transaction. Id. ___ comment. n.1. Here, appellant admitted to being a supplier of ________ cocaine, hardly a minor role in any drug operation. As a result, we cannot conclude that the district court's finding in this regard was clearly erroneous. For cases in which we have reached similar results, see Brum, 948 F.2d at 820-21 ____ (when police conducted search, defendant found standing next to table on which cocaine packaging operation being conducted); United States v. DiIorio, 948 F.2d 1, 5-6 (1st _____________ _______ -8- Cir. 1991) (defendant had knowledge of codefendants' ongoing plans to sell cocaine, received money for cocaine and participated in setting up meeting place); Rosado-Sierra, 938 _____________ F.2d at 2(defendant worked asa "broker" forseller ofcocaine). 3. Appellant's final argument is that he did not receive a fair sentencing hearing. He lists eight instances in which he claims that the sentencing judge was biased, evinced a predisposition to defend the government, already had prejudged appellant's guilt and made findings prior to hearing appellant's evidence and testimony. Having carefully reviewed the transcript and read the eight excerpts in the context of the entire hearing, it is plain that the judge allowed appellant to present evidence and to testify. It also is clear that he listened to what appellant and his attorney had to say before imposing sentence. That he found appellant's version of the facts not credible does not render the hearing biased or unfair. See 18 U.S.C. 3742(e) ___ ("court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses"). The judgment of the district court is affirmed. ________ -9-