UNITED STATES, Appellee,

v.

**Luis M. PAVAO, Defendant, Appellant.**

No. 91–1075.

United States Court of Appeals,
First Circuit.

Heard Sept. 4, 1991.

Decided Nov. 8, 1991.

William H. Kettlewell, by Appointment of the Court, with whom Dwyer, Collora & Gertner, Boston, Mass., was on brief, for appellant.

Stephen A. Higginson, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., and Martin F. Murphy, Asst. U.S. Atty., Boston, Mass., were on brief, for appellee.

Before BREYER, Chief Judge, ALDRICH, Senior Circuit Judge, and CAMPBELL, Circuit Judge.

BREYER, Chief Judge.

Luis Pavao, the appellant, pled guilty to a charge of impersonating a federal drug agent. 18 U.S.C. § 912. The district court found that Pavao's impersonation helped him to obtain money fraudulently from several victims. It therefore applied the Sentencing Guideline for fraud. U.S.S.G. § 2F1.1(a) (Base Offense Level 6). The court determined that Pavao's fraudulent behavior involved: (a) impersonation of a federal agent, § 2F1.1(b)(3) (add two levels); (b) more than minimal planning, § 2F1.1(b)(2) (add two levels); (c) a monetary loss of between $20,000 and $40,000, § 2F1.1(b)(1)(E) (add four levels); and (d) a vulnerable victim, § 3A1.1 (add two levels), resulting in an offense level of 16. Taking account of Pavao's prior record (Criminal History Category III), the court found a Guidelines sentencing range of 27 to 33 months applicable. The court sentenced Pavao to 27 months in prison. Pavao appeals, challenging this sentence on several grounds.

■ 1. Pavao argues that the district court should not have applied the Sentencing Guideline for fraud. He concedes that a cross-reference in the "impersonation" guideline, § 2J1.4, appears to lead the court to the fraud guideline. Section 2J1.4(c)(1) states that if the "impersonation was to facilitate another [and graver] offense, apply the guideline for an attempt to commit that offense." The court found that the impersonation facilitated the offense of "fraud." And, the general "attempt" guideline, § 2X1.1(b)(1), instructs the court to apply the guideline for the actual of-

fense (fraud), where all the necessary acts were completed. Hence, the court sentenced Pavao under the fraud guideline. § 2F1.1.

Pavao claims, however, that the evidence does not support the court's finding that the impersonation facilitated a fraud. We disagree. The Pre–Sentence Report indicates that Pavao falsely told two women, Lynda Bedard and Helena Condez, that he was a Drug Enforcement Agent, that he knew the DEA was about to arrest them for distributing drugs, that he would help them avoid arrest, and that they must follow his orders or drug "kingpins" might harm them. Over the next few months, Pavao, maintaining his impersonation, convinced Lynda Bedard's family that he was trying to help her avoid arrest and escape harm. During this time, he convinced her father to invest $8,760 in Pavao's financial consulting business, to give Pavao authority to manage the father's bank accounts, and to give Pavao his credit card numbers. Pavao convinced Lynda Bedard and Helena Condez to quit their jobs at a restaurant, come to work for his financial consulting business, and move out of their homes and into a condominium. He failed to return Mr. Bedard's $8,760. He gave Lynda Bedard and Helena Condez wage checks that often bounced. He obtained various small amounts of money from them, which he failed to return.

None of the defendant's objections to the Pre–Sentence Report or comments at the sentencing hearing challenges this basic chain of events. And, these facts adequately support the district court's conclusion that, when the defendant started his impersonation,

> he may have had honorable motives to help Ms. Bedard.... [But] those honorable motives disappeared very quickly, and ... he did not thereafter continue in his honorable way, and, in fact, used the impersonation not only to get money, but also he clearly intimidated Ms. Bedard and her friend, as well as using the family—Mr. and Mrs. Bedard—to give him money.

Of course, obtaining money by fraud may not have been the defendant's *primary* objective. But the "cross-reference" provision of the impersonation guideline does not refer to the primary objective or purpose of an impersonation. It speaks only of an impersonation that "facilitates" another offense. Why should an impersonator, who knowingly facilitates a robbery, not be punished as a robber, even if robbery was not his *main* object? Thus, in our view, the district court should use the cross-reference when an impersonation facilitates the commission of another offense to some significant degree. And, the evidence in this case is sufficient to show that it did so. That is to say, the impersonation helped Pavao obtain money and services through fraud.

■ Pavao also argues that the use of the fraud guideline is improper because the law forbids the court from considering any of his conduct other than the *impersonation itself* (the specific conduct comprising the elements of the offense of conviction) when the court decides whether to apply the "cross reference." The Guidelines, however, state the contrary. They specifically instruct the court to consider not just the "offense of conviction," but *"all acts and omissions committed ... during the commission* of the offense of conviction" when it applies "cross references in Chapter Two [which includes the impersonation provision]." § 1B1.3(a)(1) (emphasis added). We have previously explained how the Guidelines, in basing punishment, in part, upon the real conduct that underlies the offense of conviction, reflect the way that judges typically sentenced offenders before the Guidelines became law. *See United States v. Blanco,* 888 F.2d 907, 909–11 (1st Cir.1989). And, we have held that the Guidelines may lawfully determine punishment in this way. *See United States v. Mak,* 926 F.2d 112, 113 (1st Cir.1991); *United States v. Fox,* 889 F.2d 357, 360–61 (1st Cir.1989); *Blanco,* 888 F.2d at 908–09. *See also United States v. Bradley,* 917 F.2d 601, 605 (1st Cir.1990) (district court's determination concerning scope of relevant conduct reviewed under clearly erroneous standard)

(citing cases). Pavao presents no new argument, and our prior decisions require us to reject his claim.

■ At oral argument, Pavao made a final heroic attempt to escape application of the fraud guideline. He contended that by the time he obtained money from Lynda Bedard and her parents, he was no longer impersonating a DEA agent. He told them that he had retired from the Agency and that he was now running L & L Investments, a financial consulting and investment business that he had started. Thus, Pavao argues, any fraud was not connected with his impersonation, since that had ended. Even if we were willing to overlook the fact that appellant raised this argument at the eleventh hour, *see Piazza v. Aponte Roque,* 909 F.2d 35, 37 (1st Cir. 1990), it would do him no good. His statement that he *had been* a DEA agent was just as false as the statement that he *was* a DEA agent—and it was no less related to the fraud.

■ 2. Pavao points out that the district court, in applying the fraud guideline, added four levels because of the victims' "loss" of between $20,000 and $40,000. § 2F1.1(b)(1)(E). He argues that the evidence does not permit the court to make this finding. Again, we disagree.

The Guidelines explain "loss" as the "value of property taken, damaged, or destroyed," and add that the "loss need not be determined with precision," but "may be inferred from any reasonably reliable information available." § 2B1.1, application notes 2, 3; *see also* § 2F1.1, application notes 7 (cross-reference), 8 ("The court need only make a reasonable estimate of the range of loss, given the available information."). Given that the amount of loss is a factual determination, we must simply decide whether the court's decision that Pavao's fraudulent behavior caused at least $20,000 in losses was "clearly erroneous." 18 U.S.C. § 3742(e); *United States v. Wright,* 873 F.2d 437, 443–444 (1st Cir. 1989); *see also United States v. West,* 942 F.2d 528, 532 (8th Cir.1991).

The record indicates that Lynda Bedard's father gave Pavao $8,760 for his investment business. The court could reasonably have concluded that he would not have given Pavao this money had he not believed that Pavao was a DEA agent trying to help his daughter. And, Bedard consequently lost this money.

The record also indicates that Helena Condez lost her house due, among other things, to a failure to keep up her mortgage payments. Pavao was responsible, at least, for some of this loss, for he insisted that she move, that she leave her former job, and that she go to work for him. Pavao often paid her wages with checks that bounced, leaving her without money to make the mortgage payments. The court could reasonably conclude that Pavao's behavior, in part, constituted an effort to obtain services (or a failure to pay legitimate wage claims) through fraud. And, it could conclude that this behavior, to some extent, contributed to Ms. Condez's failure to keep up her mortgage payments. The court's attribution of $15,000, half of the value of the loss, to Pavao is reasonable.

In sum, we cannot say the court's subsidiary findings or the attribution of losses that we have just outlined are clearly erroneous. And, these two items, the loss of the house and of Mr. Bedard's money, themselves create a loss of over $20,000, providing sufficient justification for the four-level increase imposed by the court.

■ 3. Pavao argues that the district court could not lawfully add two levels under Guidelines § 3A1.1, which provides for enhancement if

the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct.

The court found that Lynda Bedard was especially "vulnerable" to the offense "because she was a drug user, and the defendant knew it." It said the defendant "played on that vulnerability" for a considerable period of time, using it "to persuade her parents that she was in danger."

The issue seems a close one, for Lynda Bedard was not a child, and we should hesitate to say that anyone involved with drugs becomes *ipso facto* a "vulnerable victim" of a crime like that of Pavao. *Cf. United States v. Wilson,* 913 F.2d 136, 138 (4th Cir.1990) (no special vulnerability when fraudulent solicitation sent randomly to inhabitants of town struck by tornado); *United States v. Creech,* 913 F.2d 780, 781–82 (10th Cir.1990) (no enhancement where defendant attempted to extort money by mail from newlywed husband, selected at random, by threatening wife); *United States v. Paige,* 923 F.2d 112, 113–14 (8th Cir.1991) (all convenience store clerks not necessarily vulnerable victims). *But see United States v. Jones,* 899 F.2d 1097, 1100 (11th Cir.) (bank teller a vulnerable victim of larceny), *cert. denied,* — U.S. ——, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990).

Nonetheless, the record indicates that, while the court initially classified Lynda Bedard as a "vulnerable victim" before seeing her, it later had an opportunity to hear her testify and to observe her first hand. That fact and the rather unusual circumstances of this case lead us to believe that the court, before reaching a final conclusion, considered Lynda Bedard as an individual, and that it did not rest its ultimate determination simply upon the fact that she belonged to a class of 21 year old female drug users. *Compare Creech,* 913 F.2d at 781–82 (reversing enhancement where district court focused on class of potential victims and did not consider victim as an individual); *Paige,* 923 F.2d at 114 (same). The individual facts about Lynda Bedard (that she was young, close to her family, a drug user) combined with those of the crime (suggesting, perhaps, a special degree of fear or naivete on her part) make a finding of unusual vulnerability plausible. In addition, during allocution Pavao himself explained that, "at that time [of his impersonation] ... the only thing that [Lynda Bedard] feared was going to jail, and she was in a very very bad state at that particular time."

Taking all these circumstances together, we cannot say the district court's determi-

nation was "clearly erroneous." *See United States v. Astorri*, 923 F.2d 1052, 1055 (3d Cir.1991) (vulnerability of adult investors upheld where defendant used his romantic involvement with their daughter to obtain money from them); *United States v. Rocha*, 916 F.2d 219, 244–45 (5th Cir.1990) (enhancement appropriate where the kidnap victim was seventeen years old, easily intimidated, and still apparently terrified during the trial), *cert. denied*, —— U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991).

■ 4. Pavao argues that the court should have applied a special two-level downward adjustment for "acceptance of responsibility." *See* § 3E1.1. This section applies if the "defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." § 3E1.1(a). While a guilty plea is "significant evidence" of "acceptance of responsibility," it does not require the court to grant the downward adjustment. § 3E1.1, application note 3. And, the "determination of the sentencing judge is entitled to great deference on review." *Id.*, application note 5; *see also United States v. Royer*, 895 F.2d 28, 29 (1st Cir.1990) (discussing clearly erroneous review for determinations of acceptance of responsibility).

The district court denied Pavao the two-level credit because "to this day, [he] does not accept that he did something more than try to help Ms. Bedard in her drug problems." Indeed, even after the court made this statement, the defendant, while regretting his impersonation, said "my intent was good. My intent was to help L[y]nda Bedard. It just turned out as bad as it did, but my intent throughout was to help L[y]nda Bedard." And, he went on to continue to deny any effort "to defraud her." Although the defendant obviously had every right to make this statement, it is not consistent with accepting responsibility for his impersonation. It, along with other similar statements, convince us that the Guidelines permitted the district court to deny him the "acceptance of responsibility" adjustment. Because the district court's

determination denying Pavao the two-level credit was based on Pavao's not accepting full responsibility for the impersonation itself, we need not consider Pavao's contention that the district court's determination contravenes our holding in *United States v. Perez–Franco*, 873 F.2d 455, 459 (1st Cir.1989) (defendant not required to accept responsibility for charges dismissed as part of plea agreement).

For these reasons, the judgment of the district court is

*Affirmed.*