April 22, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1459

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN L. TRACY,

Defendant, Appellant.

No. 92-1461

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN L. TRACY,

Defendant, Appellant.

No. 92-1554

UNITED STATES OF AMERICA,

Appellant,

v.

JOHN L. TRACY,

Defendant, Appellee.

ERRATA SHEET

The opinion of this Court issued on March 29, 1993, is
amended as follows:

On page 15, line 1, continued to line 3, place a period
after "counsel". Delete "and to follow the federal rules of
civil procedure. See Fed. R. Civ. P. 11 (motions must be

signed).".

March 29, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1459

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN L. TRACY,

Defendant, Appellant.

No. 92-1461

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN L. TRACY,

Defendant, Appellant.

No. 92-1554

UNITED STATES OF AMERICA,

Appellant,

v.

JOHN L. TRACY,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Cyr, Circuit Judge,

Campbell, Senior Circuit Judge,

and Boudin, Circuit Judge.

J. Michael McGuinness, by Appointment of the Court, with whom

McGuinness & Parlagreco and John L. Tracy pro se were on brief for

defendant.
F. Mark Terison, Assistant United States Attorney, with whom

Richard S. Cohen, United States Attorney, was on brief for the United

States.

March 29, 1993

CAMPBELL, Senior Circuit Judge.

Defendant/appellant, John L. Tracy, was convicted in the

United States District Court for the District of Maine of

three counts of distribution and attempted distribution of

lysergic acid diethylamide ("LSD") in violation of 21 U.S.C.

841(a)(1) and 846. Tracy also separately pled guilty to

one count of failure to appear as ordered by the court, 18

U.S.C. 3146(a)(4). Tracy was sentenced to 97 months on the

distribution counts and a 24-month consecutive sentence on

the failure to appear count. In a scattershot approach,

Tracy raises a plethora of arguments challenging his

conviction and the resulting sentence. Pursuant to 18 U.S.C.

3742(b), the government appeals from the district court's

refusal to enhance Tracy's sentence for obstruction of

justice under U.S.S.G. 3C1.1. We affirm Tracy's

conviction, but vacate and remand for the district court to

reconsider whether an enhancement of his sentence is

warranted under 3C1.1.

I.

Tracy was initially indicted in the District of

Maine, in an indictment that was unsealed on October 4, 1990,

for distribution of LSD in July 1989 and August 1990. On

January 15, 1991, the district court empaneled a jury.

However, the trial was continued on January 28, 1991, prior

to the swearing of the jury, when Tracy's attorney became

-3-

aware of a conflict involving a potential defense witness.

One of the government's witness statements included the name

of a present client of Tracy's attorney. Because of the

potential conflict between the two clients, the court granted

defense counsel's motion to withdraw. The court also granted

Tracy a continuance of two weeks to decide whether to hire

new private counsel or to accept a court-appointed lawyer.

The court reminded Tracy that his speedy trial rights were

waived during the period of continuance. On February 6,

1991, Tracy requested court-appointed counsel.

A superseding indictment, which changed the date of

one of the LSD sales, was filed on February 26, 1991.

Tracy's case was placed on the trial calendar for March 25.

However, on March 12, Tracy moved for a continuance because

he had not yet met with his new attorney. The court granted

the continuance and later rescheduled the trial to begin on

May 20, 1991.

A second superseding indictment, which added a new

count charging Tracy with attempted sale of LSD on August 22,

1990, was returned in five counts on April 24, 1991. Another

jury was empaneled on May 20, but it was not sworn. On the

day the trial was to begin, Tracy's attorney asked for

another continuance because Tracy had broken his leg and

wanted a new attorney. After determining that the lawyer-

client relationship had disintegrated, the court granted the

-4-

attorney's motion to withdraw and the motion for a

continuance. The court again explained to Tracy that his

motion for a continuance stopped the speedy trial clock.

Tracy's trial was rescheduled for August 14, 1991.

Tracy, however, failed to report by telephone to his pretrial

services officer on August 12, and failed to appear for trial

on August 14. When Tracy was arrested in Florida on August

28, he was carrying false identification and pretended to be

someone else. Authorities returned Tracy to the District of

Maine, and the district court rescheduled his trial. On

September 17, the grand jury issued an additional single

count indictment against Tracy charging him with failure to

appear for trial.

Trial began in the LSD case on October 15, 1991.1

At the outset, the court instructed the jury to consider the

five alleged offenses separately. The government's case was

based primarily on the testimony of undercover agents and

informants, as well as several tape recorded conversations

with Tracy. The testimony and recordings revealed that on

August 18, 1990, a cooperating individual named Russell

Wright purchased 20 doses of LSD from Tracy at his cabin for

$80. On August 20, Wright returned to Tracy's cabin and

purchased 50 doses of LSD from Tracy for $150. The LSD

1. A judge different from those who had previously handled
Tracy's case took over on the day that the trial began.

-5-

purchased on both August 18 and 20 was on yellow blotter

paper with black airplanes.

On August 22, Wright attempted a third purchase of

LSD from Tracy at his cabin. Several agents from Maine's

Bureau of Intergovernmental Drug Enforcement ("BIDE")

testified that the purpose of this attempt was to flush out

the source of Tracy's LSD by requesting a high enough number

of doses that Tracy would not have them on hand. Wright

therefore requested 200 doses. When Tracy replied that he

had only 100, a BIDE agent instructed Wright not to complete

the purchase. Wright, however, testified that he did get a

look at the LSD and noticed that it was on the same yellow

blotter paper with black airplanes.

Another cooperating informant, Curtis Elwell,

testified about Tracy's alleged offenses in 1989. Elwell

testified that Tracy supplied him with LSD, which Elwell in

turn sold to a confidential informant on two occasions in

July 1989. Elwell admitted that he was arrested for these

sales and that his sentence was reduced from 60 months to 42

months for his cooperation with the government. The court

did not allow Tracy to impeach Elwell with a fourteen-year-

old drug conviction.

The government closed its case with evidence

concerning Tracy's flight to Florida. This was offered to

show consciousness of guilt. Over Tracy's objection, Eric

-6-

Thompson, a United States Deputy Marshal from Florida,

testified to Tracy's attempt to conceal his identity at the

time of his arrest in Florida. At the conclusion of

Thompson's testimony, the government rested. Tracy did not

then move for acquittal.

Tracy took the stand in his own defense. He

testified to his drug use, to the availability of drugs

during his youth, and to the availability of LSD among

Grateful Dead followers. Contrary to a tape recording of his

conversation with Wright in which Tracy purportedly said that

he had to "make something" for his LSD dealing, Tracy

testified that he "was willing to just get [his] money back."

Tracy further testified that he and his family were afraid of

Wright because he seemed aggressive. According to Tracy and

his step-daughter, who also testified, the family decided to

sell Wright artificial LSD if he returned, in an apparent

belief that Wright would then leave them alone. Tracy

testified that on August 22, 1990, the LSD that he attempted

to sell to Wright was fake and was on blue blotter paper.

Tracy made no motion for acquittal after resting his case.

After the close of the evidence, the court again

instructed the jury to consider each alleged offense

separately. Thereafter, the jury found Tracy guilty of the

three August 1990 LSD offenses, but acquitted him on the two

July 1989 charges.

-7-

Following the above convictions, but before

sentencing, Tracy, on November 7, 1991, entered a plea of

guilty to the separate charge of failure to appear.

II.

A. Pretrial and Trial Issues

1. Joinder of Counts

Tracy contends that the district court abused its

discretion when it refused to order separate trials for the

1989 and 1990 LSD distribution charges. Rule 14 of the

Federal Rules of Criminal Procedure, which governs motions to

sever, provides in relevant part the following: "If it

appears that a defendant . . . is prejudiced by a joinder of

offenses . . . the court may order an election or separate

trials of counts, . . . or provide whatever other relief

justice requires." A district court's denial of a motion for

relief from prejudicial joinder brought pursuant to Fed. R.

Crim. P. 14 is reviewed only for abuse of discretion. E.g.,

United States v. Chambers, 964 F.2d 1250, 1251 (1st Cir.

1992). Such a denial will not be reversed unless the

challenger makes "a strong showing of prejudice." United

States v. Gray, 958 F.2d 9, 14 (1st Cir. 1992) (quoting

United States v. Font-Ramirez, 944 F.2d 42, 45 (1st Cir.

1991), cert. denied, 112 S. Ct. 954 (1992)).

Tracy contends that he was prejudiced in two ways.

First, Tracy maintains that he was put in the untenable

-8-

position of wishing to testify on the 1989 offenses while

wanting to remain silent on the 1990 offenses. See United

States v. Bronco, 597 F.2d 1300, 1302-03 (9th Cir. 1979).

However, as the magistrate noted in recommending denial of

the motion to sever below, Tracy's allegations of prejudice

were conclusory; they did not show with any particularity the

nature of the claimed prejudice. To make the requisite

strong showing of prejudice, a defendant must "present enough

information regarding the nature of the testimony he

wishes to give on one count and his reasons for not wishing

to testify on the other to satisfy the court that the

claim of prejudice is genuine and to enable it intelligently

to weigh the considerations of 'economy and expedition in

judicial administration' against the defendant's interest in

having a free choice with respect to testifying." Baker v.

United States, 401 F.2d 958, 977 (D.C. Cir. 1968); Bronco,

597 F.2d at 1303 ("[a]n accused should show the specific

testimony he will present about one offense, and his specific

reasons for not testifying about others, to justify

severance."). Because Tracy's claims of prejudice were

conclusory, the district court had no factual basis on which

to determine whether Tracy's claim of prejudice was genuine.

-9-

Tracy's claims of prejudice on appeal remain no more concrete

than formerly.2

Second, Tracy suggests that he was prejudiced when

evidence of both the 1989 and 1990 distributions was heard by

the jury. As a result, Tracy claims, the government was able

to "bootstrap" the credibility of Curtis Elwell. The jury,

however, acquitted Tracy of the counts dependent on Elwell's

testimony. Thus, Tracy's defense to the 1989 distributions

was not prejudiced by any bolstering of Elwell's credibility.

The district court carefully instructed the jury at

both the beginning and end of the case that it must consider

each charge separately and make a separate determination on

each count without regard to the others. See, e.g.,

Chambers, 964 F.2d at 1251; Gray, 958 F.2d at 15. By

repeatedly instructing the jury to consider each charge

separately, the district court "minimized any possible

prejudice" from the joinder of offenses. United States v.

Natanel, 938 F.2d 302, 308 (1st Cir. 1991), cert. denied, 112

S. Ct. 986 (1992). The jury, apparently taking heed of the

district court's clear instructions, acquitted Tracy of the

charged 1989 LSD distributions and convicted him on the 1990

2. At oral argument before this court, Tracy's counsel
suggested for the first time that Tracy was prejudiced by the
admission of prior convictions to impeach his credibility.
As this argument was not presented below nor mentioned in
Tracy's brief, it was waived. See, e.g., United States v.

Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S.

1082 (1990).

-10-

distributions. See Natanel, 938 F.2d at 308; United States

v. Tashjian, 660 F.2d 829, 834 (1st Cir.), cert. denied sub

nom. Campbell v. United States, 454 U.S. 1102 (1981). The

jury's selectivity in its verdicts affords "reasonably good

assurance" that spillover prejudice did not result from

joinder of offenses. See Natanel, 938 F.2d at 308.

The district court did not abuse its discretion in

denying Tracy's motion to sever.

2. Prosecutorial Misconduct

Tracy next contends that the district court should

have dismissed the indictment in January 1991, when the

government revealed its intent to call a witness who was also

a client of Tracy's then-attorney, thereby forcing his

attorney to withdraw. Because the government did not call

the witness when the case eventually went to trial, Tracy

asserts prosecutorial misconduct.

As the government points out, the record refutes

the factual basis for Tracy's contention. Tracy's original

attorney withdrew because she learned that another client was

a potential witness for the defense, not for the government.

The week before Tracy's originally scheduled January trial

date, the government had disclosed the recorded statements of

its witnesses, including the grand jury testimony of

Detective Ron Gastia. Detective Gastia had mentioned the

name of a confidential informant who was also a client of

-11-

Tracy's attorney. Believing the informant was a potential

witness for Tracy, but that such a role would be against the

informant's interest, Tracy's attorney discerned a conflict

and withdrew. Nothing in the record indicates that the

government was aware of the relationship between Tracy's

attorney and the confidential informant, or that the

government acted in any way but responsibly in disclosing

Detective Gastia's grand jury testimony. The district

court's denial of Tracy's motion to dismiss was not an abuse

of discretion.

3. Evidentiary Rulings

a. Evidence of Fear

Tracy argues that the district court erred in

admitting evidence of Wright's fear of Tracy. Tracy contends

that this testimony was irrelevant and unduly prejudicial

under Rule 403 of the Federal Rules of Evidence. Because

Tracy did not object to this testimony at trial, our review

is for plain error only. See, e.g., United States v.

Arboleda, 929 F.2d 858, 870 (1st Cir. 1991). Under this

standard, we will reverse a conviction only if an error

affects the "fundamental fairness of the trial." E.g.,

United States v. Vest, 842 F.2d 1319, 1326 n.4 (1st Cir.),

cert. denied, 488 U.S. 965 (1988).

Tracy cannot meet this high standard. Wright said

only a few words about his concerns for his safety while

-12-

cooperating with the government. Such evidence of fear in

the context of drug deals is not unusual as the drug trade is

not a safe business. In fact, both Tracy and his step-

daughter testified of their own fear of Wright. Admission of

Wright's concerns for his safety plainly did not undermine

the "fundamental fairness of the trial."

b. Drug Culture

Tracy contends that the district court erred in

refusing to allow him to testify about the effects LSD had on

him. According to Tracy, the testimony would be relevant to

show that he was a user, and not a dealer of LSD. We will

reverse a trial court's Rule 403 relevance determinations

only for an abuse of discretion. E.g., United States v.

Rodriguez Cortes, 949 F.2d 532, 540-41 (1st Cir. 1991);

United States v. Green, 887 F.2d 25, 27 (1st Cir. 1989).

The district court's Rule 403 ruling was clearly

not an abuse of discretion. We fail to see how testimony of

the physical and psychological effects of LSD on Tracy was

relevant to whether Tracy was or was not a dealer of LSD.

Even accepting the dubious argument that being a user cuts

against being a dealer, ample evidence of use went in. The

court let Tracy testify that today's LSD just made him giggly

and did not produce hallucinations. He spoke of his drug

use, the availability and widespread use of drugs during his

youth, the availability of LSD among followers of the rock

-13-

group Grateful Dead, and the nonprofit sharing of drugs among

the "rainbow community" to which Tracy apparently belonged.

The jury could have had few illusions.

c. Evidence of Flight

Tracy contends that the district court erred in

admitting, to show consciousness of guilt, evidence of his

flight to Florida and of his attempt to conceal his identity

when he was arrested there. According to Tracy, this

evidence was irrelevant and grossly prejudicial, and should

have been excluded under Rules 401 and 403 of the Federal

Rules of Evidence. Contrary to Tracy's assertions, evidence

of a defendant's flight and attempts to conceal or falsify

identity may be presented at trial as probative of a "guilty

mind" if "there is an adequate factual predicate creating an

inference of guilt of the crime charged." United States v.

Camilo Montoya, 917 F.2d 680, 683 (1st Cir. 1990) (quoting

United States v. Hernandez-Bermudez, 857 F.2d 50, 52 (1st

Cir. 1988)); United States v. Grandmont, 680 F.2d 867, 869

(1st Cir. 1982). In the present case, before the deputy

marshal from Florida testified, the government established

that Tracy had been scheduled for trial in August 1991 and

had failed to appear. Other independent evidence established

his drug dealings. There was a sufficient factual predicate

to justify the admission of the flight and concealment

-14-

evidence and no abuse of discretion for the court to admit

it.

4. Pro Se Motions

Tracy contends that the district court erred in

refusing to consider several pro se motions which were

unsigned and which were filed in March and April, 1992, when

Tracy was represented by counsel. A district court enjoys

wide latitude in managing its docket and can require

represented parties to present motions through counsel. The

district court did not abuse its discretion in refusing to

consider Tracy's unsigned, pro se motions.3

5. Waiver

Tracy raises a host of other conclusory contentions

for which Tracy has provided virtually no argument and no

citation to authorities. Included among these bare

allegations are Tracy's "arguments" that the January and May

1991 jury empanelments subjected him to double jeopardy; that

his speedy trial rights were violated; that the district

court erred in refusing to allow him to impeach Curtis Elwell

with a fourteen-year-old conviction; that his due process

rights were violated because Elwell received a reduction in

sentence for cooperating with the government; and that there

3. Tracy also suggests that his convictions must be reversed
because of the cumulative prejudicial effect of district
court errors. Because we find that the district court did
not err, we reject this argument.

-15-

was insufficient evidence to support the jury's guilty

verdicts.

It is well settled that issues are deemed waived

when "adverted to in a perfunctory manner, unaccompanied by

some effort at developed argumentation." See United States

v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S.

1082 (1990); United States v. Bell, 936 F.2d 337, 343 (7th

Cir. 1991. Notice pleadings do not suffice for appellate

briefs. See Fed. R. App. P. 28(a)(5) (appellant's argument

shall "contain the contentions of the appellant with respect

to the issues presented, and the reasons therefor, with

citations to the authorities, statutes and parts of the

record relied on."). Because Tracy has completely failed to

develop the arguments mentioned above, they are deemed

waived. Nevertheless, we have examined all of Tracy's

abandoned arguments and are independently satisfied that they

are without merit.

B. Sentencing

1. Amount of LSD

Tracy disputes the computation of the amount of LSD

involved in the attempted sale on August 22, 1990. The

district court assigned a weight to the LSD offered but not

sold on August 22 by extrapolating from the weight of the LSD

Tracy actually sold to Russell Wright on the two prior

occasions. The first sale on August 18 involved 20 doses,

-16-

which weighed a total of .11 grams (.0055 grams per dose).

The second sale on August 20 involved 50 doses, which weighed

a total of .32 grams (.0064 grams per unit). Based on this

information, the court determined an average weight of .00595

grams per dose. The court then calculated a weight of .595

grams for the 100 doses involved in the third attempted sale.

This calculation produced a total weight for all three

offenses of 1.025 grams (.110 + .320 + .595), and a base

offense level of 26. Combined with Tracy's criminal history

category III, the calculation yielded a guideline range of 78

to 97 months.

Tracy contends that the district court erred as a

matter of law by failing to apply the Typical Weight Per Unit

Table found at application note 11 of the commentary to

U.S.S.G. 2D1.1.4 That table indicates that the typical

weight per unit for LSD is .05 milligrams (.00005 grams).

Applying this table, the total weight for all three offenses

would have been .435 grams (.110 + .320 + .005). This

4. Tracy also contends that the district court's calculation
violates the due process clause of the Fifth Amendment, which
provides a defendant with the right to be sentenced in
accordance with accurate evidence. See Townsend v. Burke,

334 U.S. 736, 741 (1948). As discussed below, we find the
district court's extrapolation from the previous two sales to
provide a more accurate estimate of the amount of LSD
involved in the third attempted sale than would the use of
the Typical Weight Per Unit Table. We therefore reject
Tracy's due process argument.

-17-

computation would produce an offense level of 20, rather than

26, and a guideline range of 41 to 51 months.5

Application note 11 of U.S.S.G. 2D1.1 instructs

courts to use its Typical Weight Per Unit Table when the

number of doses, pills or capsules are known, but the weight

of the controlled substance is not known. The table displays

the typical weight per dose, pill or capsule for certain

controlled substances, including LSD. Application note 11,

however, specifically cautions courts not to use the table if

a more reliable estimate of the weight is available:

5. As an alternative, Tracy suggests that the district court
should at least have used the lightest known sample to
extrapolate the weight of the LSD in the third attempted
sale. See United States v. Martz, 964 F.2d 787, 790 (8th

Cir.), (approving district court's use of lightest known
sample), cert. denied, 113 S. Ct. 823 (1992); United States

v. Bishop, 894 F.2d 981, 987 (8th Cir.), cert. denied, 111 S.

Ct. 106 (1990) (same). Applying that method, the total
weight for all three offenses would have been .980 grams
(.110 + .320 + .550). The base offense level would then be
24, and the guideline range would be 63 to 78 months.
We have said in the past that "'when choosing between a
number of plausible estimates of drug quantity . . . a court
must err on the side of caution.'" United States v. Sklar,

920 F.2d 107, 113 (1st Cir. 1990) (quoting United States v.

Walton, 908 F.2d 1289, 1301 (6th Cir.), cert. denied, 111 S.

Ct. 532 (1990)). Here, Tracy sold more than twice as many
doses of LSD at the higher weight (.0064 grams) than at the
lower weight (.0055 grams). Thus, the district court did err
on the side of caution because, had the district court
accounted for the greater number of doses sold at the higher
weight, the average weight per dose would have equaled .0061
grams ([.11 + .32] divided by 70). Given these facts, we
think the district court's averaging method was conservative
and that it could permissibly conclude in all the
circumstances of this case that this method produced a more
reliable estimate of the amount of LSD involved in the third
attempted sale than would extrapolating from the lightest
known sample.

-18-

The Typical Weight Per Unit Table,
prepared from information provided by the
Drug Enforcement Administration, displays
the typical weight per dose, pill, or
capsule for certain substances. Do not

use this table if any more reliable

estimate of the total weight is available

from case-specific information.

(emphasis added). Application note 11 further warns that the

table provides a very conservative estimate of weight for

certain substances, including LSD, because the weights

displayed in the table do not include the weight of the

mixture or substance containing the drugs:

* For controlled substances marked with
an asterisk, the weight per unit shown is
the weight of the actual controlled
substance, and not generally the weight
of the mixture or substance containing
the controlled substance. Therefore, use
of this table provides a very
conservative estimate of the total
weight.

LSD is marked with an asterisk.

A district court's finding of the amount of drugs

involved in an offense will be overturned on appeal only upon

a showing of clear error. E.g., United States v. McCarthy,

961 F.2d 972, 978 (1st Cir. 1992); United States v. Zuleta-

Alvarez, 922 F.2d 33, 37 (1st Cir. 1990), cert. denied, 111

S. Ct. 2039 (1991). In the present case, the district court

did not err in refusing to apply the Typical Weight Per Unit

Table. The district court's finding of the quantity of LSD

involved in the third attempted sale was based on the weight

of the actual doses (on the same yellow paper with black

-19-

airplanes), that Tracy had sold just days before the third

attempted sale. Where this "case-specific information" was

available, the court was warranted under note 11 in using the

former in preference to the Typical Weight Per Unit Table.

See U.S.S.G. 2D1.1, application note 11; United States v.

Bishop, 894 F.2d 981, 987 (8th Cir.), cert. denied, 111 S.

Ct. 106 (1990). The table produces conservative estimates

that, among other things, do not account for the weight of

the "mixture or substance" containing the LSD. As the weight

of LSD blotter paper is considered a "mixture or substance"

that should be included in calculating the amount of LSD for

sentencing, Chapman v. United States, 111 S. Ct. 1919, 1925

(1991), the district court properly employed the higher

average weight extrapolated from the two prior sales of LSD-

infused yellow blotter paper, rather than the more

conservative estimate derived from the Typical Weight Per

Unit Table. See United States v. Shabazz, 933 F.2d 1029,

1034 (D.C. Cir.) (Thomas, J.) ("note 11 was designed to

address problems of uncertainty, not to undermine the

preference that sentences be determined according to the

weight of the mixture or substance if possible."), cert.

denied sub nom. McNeil v. United States, 112 S. Ct. 431

(1991).

2. Acceptance of Responsibility

-20-

Tracy argues that the district court clearly erred

in refusing to adjust his base offense level on the failure

to appear count for acceptance of responsibility pursuant to

U.S.S.G. 3E1.1. According to Tracy, he has been open and

remorseful with the court since the inception of that charge.

He notes that he confessed his failure to appear when he was

first brought back from Florida, and that he eventually pled

guilty to that charge. He quotes a letter that he sent to

the district court, which stated "I have clearly made it

known that I accept responsibility for [failing to appear]

and truly regret making that decision. At that time I was

worried about the child that I thought my wife was carrying,

and was a very confused and scared man. But I regret my

actions and have apologized to this court for them."

A defendant is entitled to a two-level downward

adjustment for acceptance of responsibility if the defendant

"clearly demonstrates a recognition and affirmative

acceptance of personal responsibility for his criminal

conduct." U.S.S.G. 3E1.1(a). Although a guilty plea is

"significant evidence" of acceptance of responsibility, it

does not, by itself, compel a downward adjustment, since

"this evidence may be outweighed by conduct of the defendant

that is inconsistent with such acceptance of responsibility."

U.S.S.G. 3E1.1, application note 3, United States v. Pavao,

948 F.2d 74, 79 (1st Cir. 1991). A sentencing judge's

-21-

determination concerning acceptance of responsibility will be

overturned only if clearly erroneous. E.g., United States v.

Royer, 895 F.2d 28, 29 (1st Cir. 1990).

The district court's determination that Tracy did

not genuinely accept responsibility for his failure to appear

is amply supported by the record. Tracy used false

identification in an attempt to conceal his identity even

after Florida authorities confronted him. See United States

v. Yeo, 936 F.2d 628, 629 (1st Cir. 1991) (use of false name

supported denial of downward adjustment for acceptance of

responsibility). Further, after observing Tracy's demeanor,

the district court concluded that he was opportunistic and

would say anything to minimize his sentence. Under these

circumstances, we cannot say that the district court clearly

erred in refusing to adjust Tracy's base offense level for

acceptance of responsibility.

3. Obstruction of Justice

Pursuant to 18 U.S.C. 3742(b), the government

appeals from the district court's refusal to enhance Tracy's

sentence for obstruction of justice under U.S.S.G. 3C1.1.

The government argues that Tracy knowingly perjured himself

when testifying about the August 22, 1990 attempted sale,6

6. The alleged perjury consisted of Tracy's testimony that
the third attempted sale involved artificial LSD on blue
blotter paper. This testimony was directly contrary to
Wright's testimony that he saw the 100 doses of LSD that
Tracy attempted to sell on August 22, and these doses were on

-22-

and that, therefore, an enhancement for obstruction of

justice was mandatory.

U.S.S.G. 3C1.1 provides the following:

If the defendant willfully obstructed or
impeded, or attempted to obstruct or
impede, the administration of justice
during the investigation, prosecution, or
sentencing of the instant offense,
increase the offense level by 2 levels.

Application note 3(b) specifically identifies the commission

of perjury as the kind of conduct to which this enhancement

applies. U.S.S.G 3C1.1, application note 3(b).

The Supreme Court has recently provided guidance on

the application of U.S.S.G. 3C1.1 to perjured testimony.

See United States v. Dunnigan, 61 U.S.L.W. 4180 (U.S.

February 23, 1993). In Dunnigan, the Supreme Court ruled

that once a district court finds that a defendant has

committed perjury, the court must enhance the defendant's

base offense level by two points for obstruction of justice.

Id. at 4184; see United States v. Austin, 948 F.2d 783, 788-

89 (1st Cir. 1991). In determining what constitutes perjury,

the Court told sentencing courts to apply the generally

accepted definition of perjury in the federal criminal

perjury statute, 18 U.S.C. 1621.7 61 U.S.L.W. at 4182-83.

the same yellow blotter paper with black airplanes that Tracy
had sold on the two prior occasions.

7. 18 U.S.C. 1621 provides in relevant part the following:

Whoever

-23-

Under that definition, a witness testifying under oath or

affirmation commits perjury if he or she "gives false

testimony concerning a material matter with the willful

intent to provide false testimony, rather than as a result of

confusion,mistake orfaultymemory." Id.at 4183(emphasisadded).

The Court in Dunnigan stressed that, in order to

impose a 3C1.1 enhancement, a sentencing court "must make

independent findings necessary to establish a willful

impediment to or obstruction of justice, or an attempt to do

the same, under the perjury definition," i.e., the

sentencing court "must make findings to support all the

elements of a perjury violation in the specific case." Id.

The Court further preferred that sentencing courts "address

each element of the alleged perjury in a separate and clear

finding." Id. Such express findings, according to the

Court, help to ensure that sentences will not be enhanced "as

(1) having taken an oath before a competent
tribunal, officer, or person, in any case in which
a law of the United States authorizes an oath to be
administered, that he will testify, declare,
depose, or certify truly, or that any written
testimony, declaration, deposition, or certificate
by him subscribed, is true, willfully and contrary
to such oath states or subscribes any material
matter which he does not believe to be true . . .

is guilty of perjury . . . .

18 U.S.C. 1621(1).

-24-

a matter of course whenever the accused takes the stand and

is found guilty." Id.8

In refusing to apply the enhancement for

obstruction of justice in the present case, the district

court said,

[It] is a very close call. It is
apparent to the Court that the jury
rejected the credibility of this
defendant and of his testimony at trial.
This Court was present at that time and
heard that testimony. This Court, too,
disbelieved the accuracy of his
testimony.

Nevertheless, there are many policy
considerations that surround the question
of enhancing a base offense level which
increases potential punishment on the
basis of the Court's conclusion that
perjury has been committed. And the
Court simply is not comfortable in its

8. The Supreme Court in Dunnigan also emphatically rejected,

as has virtually every circuit court, the argument that an
enhanced sentence for perjury undermines a defendant's right
to testify. 61 U.S.L.W. at 4183; United States v. Batista-

Polanco, 927 F.2d 14, 22 (1st Cir. 1991); United States v.

Matos, 907 F.2d 274, 276 (2d Cir. 1990); United States v.

Wallace, 904 F.2d 603, 604-05 (11th Cir. 1990). "[A]

defendant's right to testify does not include a right to
commit perjury." Dunnigan, 61 U.S.L.W. at 4183. We reject

Tracy's argument to the contrary.
We also find no merit in the related contention that
Tracy's denial of guilt under oath at trial cannot be the
basis of an enhancement under U.S.S.G. 3C1.1. While
application note 1 to 3C1.1 does provide that a defendant's
denial of guilt is not a basis for an enhancement, the note
expressly excludes from this prohibition "a denial of guilt
under oath that constitutes perjury." U.S.S.G. 3C1.1,
application note 1. As we have stated in the past, "'the
authorized procedure for asserting innocence in a criminal
proceeding is the tender of an unsworn 'not guilty' plea.'"
United States v. Brum, 948 F.2d 817, 820 (1st Cir. 1991)

(quoting Batista-Polanco, 927 F.2d at 22).

-25-

own mind in concluding that the conduct
amounts to perjury of sufficient
significance to justify such an
enhancement.

The government contends that as the district court,

in the above-quoted passage, found that Tracy committed

perjury, the two-level enhancement for obstruction of justice

was mandated. Quoting the very same passage, Tracy contends

that the district court did not find perjury, and more

particularly that the district court did not make a specific

finding that Tracy had willfully lied.

We agree with Tracy that it is not clear from the

district court's discussion of obstruction of justice whether

the court found that all the elements of perjury were

satisfied. While the district court expressly stated that it

"disbelieved the accuracy of [Tracy's] testimony," we are

unable to determine whether the court also found that the

testimony concerned a material matter, or that Tracy

intentionally provided the false testimony.9 It is also

9. The government suggests that we can imply from the
district court's discussion in connection with its ruling on
the issue of acceptance of responsibility, that the district
court believed that Tracy had knowingly not told the truth in
his trial testimony. We decline the invitation. To "imply"
a finding of willful intent to commit perjury on the basis of
a district court's general comments not made in connection
with the court's perjury discussion would stretch too far,
especially in a case where the court itself declined to find
obstruction. We note also the Supreme Court's direction in
Dunnigan that district courts "must make independent findings

to establish a willful impediment to or obstruction of
justice, or an attempt to do the same, under the perjury
definition." 61 U.S.L.W. at 4183.

-26-

possible to interpret the district court's statements as

finding perjury, but requiring something more than basic

perjury to justify an enhancement for obstruction of justice.

We think the proper resolution, in these

circumstances, is to vacate the sentence and remand to the

district court "to make findings to support all the elements

of a perjury violation," or to articulate clearly the

elements it believes have not been satisfied. See Dunnigan,

61 U.S.L.W. at 4183. In making this determination, the

district court, inter alia, should be guided by the Supreme

Court's opinion in Dunnigan, the definition of perjury set

forth in the federal criminal perjury statute, 18 U.S.C.

1621, and case law interpreting that definition, see, e.g.,

United States v. Moreno Morales, 815 F.2d 725, 747 (1st Cir.)

("A statement is material if it is 'capable of influencing

the tribunal on the issue before it.'" (quoting United States

v. Scivola, 766 F.2d 37, 44 (1st Cir. 1985) (citations

omitted))), cert. denied, 484 U.S. 966 (1987). If, after

reviewing the testimony, the district court is of the "firm

conviction" that Tracy committed perjury, then the district

court must impose a two-level enhancement for obstruction of

justice. See, e.g., United States v. Torres, 960 F.2d 226,

228 (1st Cir. 1992); United States v. Brum, 948 F.2d 817, 819

(1st Cir. 1991); United States v. Rojo-Alvarez, 944 F.2d 959,

969 (1st Cir. 1991); United States v. Batista-Polanco, 927

-27-

F.2d 14, 22 (1st Cir. 1991); United States v. Akitoye, 923

F.2d 221, 228 (1st Cir. 1991).

Tracy's conviction is affirmed. His sentence is

vacated and remanded for resentencing in accordance with this

opinion.

So ordered.

-28-