**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Maria ROMERO, Defendant Appellant.**

**No. 01–10354.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 2002.

Filed June 18, 2002.

Rimantas A. Rukstele, Assistant United States Attorney, Las Vegas, NV, for plaintiff-appellee.

Rene L. Valladares, Assistant Federal Public Defender, Las Vegas, NV, for defendant-appellant.

Before HAWKINS and SILVERMAN, Circuit Judges, and RESTANI, Judge.*

## OPINION

RESTANI, Judge.

Maria Romero appeals the sentence imposed following her guilty plea to False Personation of an Officer or Employee of the United States, in violation of 18 U.S.C. § 912. Romero defrauded immigrants by posing as an employee of the Immigration and Naturalization Service ("INS") who promised to expedite their applications in exchange for money. Romero disputes the two-level enhancement she received under § 2F1.1(b)(4)(A) of the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guideline"),[1] which relates to offenses involving "misrepresentation that the defendant was acting on behalf of ... a government agency." Romero claims that application of the enhancement constitutes an impermissible double-counting, and that her conduct falls outside the scope of the enhancement. Romero, who faces deportation, also contends that the district court erroneously ruled that it lacked the authority to grant a downward departure based on Romero's family ties,

cultural assimilation, and the custodial conditions of aliens. We affirm.

### Factual and Procedural Background

On March 29, 2000, Maria Romero ("Romero") was indicted on two counts of false personation of an officer or employee of the United States, in violation of 18 U.S.C. § 912(2).[2] Count One charged that between April and July 1999, Romero "did knowingly and falsely assume and pretend to be an officer and employee of the United States" and demanded and obtained money from Maria Flores and Antonia Munoz. Count Two involved the same allegations, except that the time period was July 1999 and involved a different alleged victim. On December 13, 2000, Romero pled guilty to both charges.

The Probation Department subsequently prepared a Presentence Report ("PSR") to calculate Romero's offense. The PSR explains the applicable Guideline section for computing the Offense Level as follows:

> **Counts 1 & 2—False Personation of Officer or Employee of the United States** 18 U.S.C. § 912(2) and U.S.S.G. § 2J1.4. U.S.S.G. § 2J1.4(c) states [t]hat if the impersonation was to facilitate another offense, apply the guideline for an attempt to commit that offense, if the resulting offense level is greater. The defendant attempted to commit fraud, therefore, § 2F1.1 was used to calculate the defendant's Offense Level.

The application of U.S.S.G. § 2F1.1 resulted in a base offense level of 6, to which the following specific offense characteristics were added: (1) three levels because "the

---

* Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

1. § 2F1.1 was deleted by consolidation with § 2B1.1 effective November 1, 2001.

2. 18 U.S.C.S. § 912 (2002) reads as follows:

   § 912. Officer or employee of the United States

Whoever [1] falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or [2] in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both.
(numbering added).

defendant defrauded victims in the amount of $10,725"; (2) two levels because "the offense involved more than minimal conduct"; and (3) two levels because "the defendant misrepresented that she was acting on behalf of . . . a government agency." The defendant also received a two-level reduction for acceptance of responsibility, resulting in a Total Offense Level of 11.

Romero filed an objection to the Probation Department's application of the two level § 2F1.1(b)(4)(A) upward adjustment, claiming that it was not applicable because she was not acting on behalf of the INS in order to perpetuate a fraud. She also argued that the adjustment should not apply because she was not trying to exploit the victims' trust in the government. Romero then brought a motion for a downward departure based on (1) extraordinary circumstances regarding family ties; (2) cultural assimilation; (3) the fact that deportable aliens face objectively more severe custodial conditions than a non-alien; and (4) the totality of the circumstances.

After hearing arguments on the issue of "double counting," the district court, on June 5, 2001, overruled Romero's objection to the two-level upward adjustment and denied her motion for downward departure. The court imposed a sentence at a base offense level 11, with criminal history category I. Romero was accordingly sentenced to a ten-month term of incarceration, which she is currently serving. Romero is subject to deportation to Mexico.

### Jurisdiction and Standard of Review

■ We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). On issues arising under the Guidelines, review of the district court's factual findings is for clear error and review of its legal interpretations is de novo. *United States v. Parrilla,* 114 F.3d 124, 126 (9th Cir.1997); *United States v. Newland,* 116 F.3d 400, 402 (9th Cir.1997).

### Discussion

**I. The District Court's imposition of a two-level enhancement to Romero's Total Offense Level under § 2F1.1(b)(4)(A) did not result in impermissible double-counting.**

■ Romero argues that the district court committed double-counting because the two-level enhancement for "misrepresentation" under Guideline § 2F1.1 ("Fraud and Deceit") is based on a type of harm that already had been taken into consideration in assigning her base offense level. Romero reasons that the crime with which she was charged, False Personation of an Officer or Employee of the United States, 18 U.S.C. § 912, corresponds to Guideline § 2J1.4 ("Impersonation"), which requires cross-reference to other Guideline sections if the impersonation was to facilitate another offense, but only "if the resulting offense level is greater than[six levels]." U.S.S.G. § 2J1(c)(1). Romero construes this limitation on cross-referencing to mean that the six points of the base offense level of § 2J1.4 is necessarily "embedded" in the six point base offense level of § 2F1.1. Romero's argument lacks merit.

■ Impermissible double counting "occurs where one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the Guidelines." *United States v. Archdale,* 229 F.3d 861, 869 (9th Cir.2000) (citation omitted). *See also United States v. Snider,* 976 F.2d 1249, 1252 (9th Cir.1992) (double counting is impermissible where one Guideline provision "is akin to a 'lesser included offense' of another," yet both are applied). In this case, two parts of the Guidelines were not cumulatively applied, and there is no impermissible double-counting.

In determining the Guideline section on which Romero's sentence should be based, the Sentencing Commission first looked to § 2J1.4, as the Commentary to this Guideline indicates that the corresponding statutory provisions are 18 U.S.C. §§ 912 and 913. *See* U.S.S.G. § 1B1.2(a); *United States v. Saavedra*, 148 F.3d 1311, 1315 (11th Cir.1998) (the statutory provisions portion of an offense Guideline commentary lists statutes of conviction, for which the district court selects the corresponding offense guideline). The Background Note to § 2J1.4 specifies that "[t]his section applies to impersonation of a federal officer, agent or employee [corresponding to the first clause of § 912]; and impersonation to conduct an unlawful search or arrest [corresponding to § 913]".

After the offense guideline is selected, the relevant conduct guideline, U.S.S.G. § 1B1.3, is applied to capture the real offense behavior and the characteristics of the defendant through specific offense characteristics and cross references. *See* U.S.S.G. §§ 1B1.2(b), 1B1.2, cmt. (n.2); *see also United States v. Blanco*, 888 F.2d 907, 910 (1st Cir.1989) ("Once the court determines the proper guideline, . . . the Guidelines instruct it to determine the applicability of various adjustments . . . by looking to the offender's *actual conduct*.") (emphasis in original). When the offense of conviction's corresponding offense guideline contains a cross-reference, the district court substitutes the applicable cross-referenced offense guideline in order to calculate the statute of conviction's offense guideline range.

In this case, Guideline § 2J1.4(c)(1) provides for cross-referencing to other Guideline sections.[3] This provision states that if the impersonation was to facilitate another offense, the Guideline for an attempt to commit that offense should be applied, but only if the resulting offense level is greater than six.[4] U.S.S.G. § 2J1.4(c)(1). Because Romero pled guilty to the charge of impersonating an INS employee to facilitate the commission of a fraud (under the second clause of Section 912), the court cross-referenced § 2F1.1, the Guideline for fraud and deceit.[5] Naturally, if Romero had simply impersonated a government officer or employee without trying to commit another offense, then the cross-reference in § 2J1.4 to § 2F1.1 would not apply, and the base level would be six. Instead, Romero was charged with an offense beyond impersonating an officer, *i.e.*, impersonation for the purpose of "demand[ing] or obtain[ing]" money, thereby requiring cross-reference to § 2F1.1. *See* 18 U.S.C. § 912 ("whoever . . . in such pretended character demands or obtains any money, paper, document, or thing of value . . .").

Thus far, the Ninth Circuit has not addressed the propriety of applying the two-

3. Once the applicable guideline is established, U.S.S.G. § 1B1.1 instructs the court to determine the base offense level and apply any appropriate cross references. In accordance with § 1B1.3, which delineates relevant conduct, "cross references in Chapter Two . . . shall be determined on the basis of . . . all acts and omissions . . . committed . . . that occurred during the commission of the offense of conviction. . . ." U.S.S.G. § 1B1.3(a).

4. U.S.S.G. § 2J1.4(b)(1) instructs the sentencing court that "if the impersonation was committed for the purpose of conducting an unlawful arrest, detention, or search, increase

by 6 level." In contrast, U.S.S.G. § 2J1.4(c)(1) instructs the sentencing court that "if the impersonation was to facilitate another offense, apply the guideline for an attempt to commit that offense, if the resulting offense level is greater than the offense level determined above."

5. U.S.S.G. § 2F1.1(a), like § 2J1.4, provides for a base offense level of 6. Section 2F1.1(b), in pertinent part instructs that:

(7) If the offense involved . . . a misrepresentation that the defendant was acting on behalf of a . . . government agency . . . increase by 2 levels.

level enhancement under § 2F1.1(b)(4)(A) after cross-referencing from § 2J1.4(c)(1).[6] We determine that the application of § 2F1.1(b)(4)(A) is necessary to reflect both wrongful aspects of Romero's conduct: the "pretended character" in conjunction with the "obtaining money." "The decision to apply a guideline cross-referenced within another guideline is fact-dependent." *United States v. Morgan,* 164 F.3d 1235, 1238 (9th Cir.1999). Cross-references are determined by considering, *inter alia,* "all acts ... committed ... by defendant that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). *Cf. United States v. Reese,* 2 F.3d 870 (9th Cir.1993), *cert. denied,* 510 U.S. 1094, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994) (double counting is permissible when it is necessary to make the sentence reflect the "full extent of the wrongfulness" of a defendant's conduct). Simply applying the base offense under "fraud and deceit" would not capture the aspect of Romero's crime involving the

impersonation of a federal officer, as fraud does not necessarily entail this sort of impersonation. There is no support for Romero's contention that the conduct of false personation is necessarily "embedded" in the base offense of fraud and deceit, simply because it was applied as the result of cross-referencing.

Accordingly, we hold that the district court in this case properly applied § 2J1.4's cross-reference on the basis of Romero's impersonation to facilitate fraud, and by use of that cross-reference, incorporated § 2F1.1 and all appropriate specific offense characteristics to calculate the applicable guideline range under § 2J1.4.

## II. Romero's conduct falls within the scope of the Guideline § 2F1.1(b)(4)(A) enhancement.

Romero argues that the Application and Background Notes to § 2F1.1 indicate that her conduct does not fall within the scope of offense characteristics contemplated by the enhancement for "a misrepresentation that the defendant was acting on behalf of a charitable organization, educational, religious, or political organization, or a government agency." Specifically, Romero

**6.** Although not directly dealing with this issue, the First Circuit in *United States v. Pavao,* 948 F.2d 74 (1st Cir.1991), affirmed the district court's application of the fraud guideline § 2F1.1 pursuant to the cross-reference provision of § 2J1.4(c)(1), along with the two-level enhancement for impersonating a federal officer, among other enhancements, under § 2F1.1. The defendant in *Pavao* had pled guilty to a charge of impersonating a Drug Enforcement Agent in violation of 18 U.S.C. § 912 to obtain money fraudulently from two victims on the promise that he would assist them in avoiding arrest for distribution of drugs. The defendant argued that the use of the fraud guideline was improper because the law forbids the court from considering any of his conduct other than the impersonation itself (the specific conduct comprising the elements of the offense of conviction) when the court decides whether to apply the "cross-

reference." The Court rejected this argument, reasoning that:

> [the Guidelines] specifically instruct the court to consider not just the "offense of conviction," but "all acts and omissions committed ... during the commission of the offense of conviction" when it applies "cross-references in Chapter Two [which includes the impersonation provision]." We have previously explained how the Guidelines, in basing punishment, in part, upon the real conduct that underlies the offense of conviction, reflect the way that judges typically sentenced offenders before the Guidelines became law. And we have held that the Guidelines may lawfully determine punishment in this way.

*Pavao,* 948 F.2d at 77 (citations omitted, emphasis omitted, ellipsis added, other alterations in original).

contends that § 2F1.1(b)(4)(A) applies only to instances in which defendants actually maintain positions of trust in government, or defendants misrepresent that they are acting wholly on behalf of such organization or government agency. Romero further contends that the victims in this case were not relying on trust in government, but rather on their hope that they could circumvent the system by paying Romero under-the-table to expedite their immigration documentation. In sum, Romero argues that the enhancement is inapplicable because she did not represent, and the victims did not believe, that she was acting to the *benefit* of the agency.

■ The application of the enhancement is not as narrow as Romero contends. First, the plain meaning of "on behalf of" is broader than "to the benefit of," as the term also encompasses acting in a *representative* capacity. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (defining "on behalf of" as "in the interest of" or "as the representative of"). Second, Application Note 4 to § 2F1.1(b)(4) provides a list of non-exclusive examples of conduct to which the enhancement applies:

[1] a group of defendants who solicit contributions to a non-existent famine relief organization by mail; [2] a defendant who diverts donations for a religiously affiliated school by telephone solicitations to church members in which the defendant falsely claims to be a fund raiser for the school, or [3] a defendant who poses as a federal collection agent in order to collect a delinquent student loan.

Clearly, the third example indicates that the enhancement is not limited to defendants who abuse a position of authority they actually hold. Because the list of examples is merely illustrative, that Romero's specific acts are not described therein does not bar the application of § 2F1.1(b)(4).

■ Third, with respect to Romero's suggestion that the enhancement should not apply to instances in which the victims act to circumvent proper agency channels, the Background Note specifically states:

Use of false pretenses involving charitable causes and government agencies enhances the sentences of defendants who take advantage of victims' trust in government or law enforcement agencies or the generosity and charitable motives of victims. Taking advantage of a victim's self-interest does not mitigate the seriousness of fraudulent conduct; rather, defendants who exploit victims' charitable impulses or trust in government create particular social harm.

18 U.S.S.G. § 2B1.1 (Background). *See also Pavao*, 948 F.2d at 76(victims paid defendant impersonating DEA Agent in the belief he would assist them in avoiding arrest). Thus, the enhancement clearly covers instances in which a defendant poses as a government agent to defraud victims relying on the defendant's purported position of authority, even if such reliance is out of self-interest.

### III. The District Court did not erroneously believe it lacked the authority to grant a downward departure.

■ A district court's refusal to grant a downward departure is discretionary and free from appellate review. *See United States v. Duran–Orozco*, 192 F.3d 1277, 1283 (9th Cir.1999). "However, if the district court indicates that it believed that it did not have discretion to depart from the guidelines, this court reviews that determination *de novo*." *United States v. Davoudi*, 172 F.3d 1130, 1133 (9th Cir.1999); see also 18 U.S.C. § 3742(e)(2) (review of "incorrect application of the sentencing guidelines").

■ Romero argues that the district court's refusal to grant a downward depar-

ture was based on an erroneous conclusion that the Guidelines or case law prohibit departures based on the factors she raised (specifically, family ties and assimilation; the fact that deportable aliens face objectively more severe custodial conditions than a non-alien; and the totality of the circumstances).

The record shows that the district court did not consider itself barred from considering the cited factors. The district court specifically stated: "I do not believe that there is *sufficient legal justification* for the downward departure based upon arguments or the authorities that have been presented." Thus, the district court did not indicate any belief that departure was prevented as a matter of law, but found that there was insufficient basis for the departure. *See United States v. Belden,* 957 F.2d 671, 676 (9th Cir.1992) (finding that district court did not believe departure was prevented as a matter of law where judge stated that he was "not inclined to depart" and that there was no basis for departure), *cert. denied,* 506 U.S. 882, 113 S.Ct. 234, 121 L.Ed.2d 169. Absent a clear statement to the contrary, it must be concluded that the court, while aware of its authority to grant a downward departure as a matter of law, was not persuaded to do so, based on the arguments presented. *See United States v. Garcia–Garcia,* 927 F.2d 489, 491 (9th Cir. 1991). We therefore decline to review the district court's decision not to depart, and do not decide whether a departure on any of the grounds asserted would have been warranted. *See id.*

## Conclusion

Accordingly, we AFFIRM the judgment of the district court.